**Alfonzo GRAVES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**Nos. 48S04–8608–CR–726, 4–285A45.**

Supreme Court of Indiana.

Aug. 14, 1986.

Thomas E. Hamer, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Alfonzo Graves was charged with robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1984 Supp.), and a jury found him guilty of the lesser included offense of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1984 Supp.). The Court of Appeals reversed the conviction, finding that the admission of a book containing undisguised "mug shots" was unduly prejudicial. *Graves v. State* (1985), Ind.App., 482 N.E.2d 1169.

The State filed a petition for rehearing, together with affidavits of the trial judge and court reporter attesting that the photographs in question had not been displayed to the jury. The Court of Appeals issued an unpublished opinion in which it declined to review its decision on the issue. *Graves v. State* (1985), Ind.App., 486 N.E.2d 666. It stated that the purpose of rehearing was to point out error in the original opinion, that argument cannot be made for the first time on rehearing, that the petition for rehearing must rely on the same theory as the original appeal, and that the record could not be supplemented at rehearing.

We find that the affidavits submitted accurately reflect the record as presented on appeal and choose to address the appellant's argument on its merits. Accordingly, we grant transfer and vacate the opinion of the Court of Appeals.

Appellant raised three additional arguments on appeal, which the Court of Appeals did not address because of its disposition of the first issue. This opinion therefore addresses the following four issues:

1) Whether the admission of a book containing "mug shots" requires reversal where the book was not displayed to the jury;

2) Whether the court erred in allowing the State to amend the information seven days before trial;

3) Whether the court erred in denying the defendant's motion for mistrial following the prosecutor's reference during voir dire to "similar acts" of the defendant; and

4) Whether the court erred in allowing testimony about oral statements which appellant alleges were made involuntarily and after he asserted his right to remain silent.

The facts upon which Graves' conviction is based are succinctly stated by the Court of Appeals, and we restate them here.

The facts most favorable to the state show that on the night of [May 12, 1984], Willie Bell Jackson arrived at the A-Town Motorcycle Club in Anderson,

Indiana. Her husband was with her when she arrived, but he later left the club to go to the store, and she followed him outside. He left after she asked him to get her some cigarettes. As she turned to go back into the club, she was approached by two men, one tall and one short. The tall man said, "Shut up, bitch, and give me that purse," while grabbing and pulling on her handbag. Jackson was thrown to the sidewalk, and the assailants ran off with her purse. Jackson's resulting injuries included a broken arm, skin scraped off her arm and shoulder, and a big knot on her head. A few days later, Jackson gave a statement to the Anderson Police Department. She also looked at a police photo album and picked out photographs of her two assailants. Jackson selected a picture of Graves and identified him as the taller man who grabbed her purse and caused her injuries.

Graves was arrested in Muncie, Indiana, and was returned to Anderson for questioning. He denied robbing the victim and stated at first that he had been in Muncie the night of the robbery, and he later claimed to have been in Cleveland that night.

During the testimony of the state's first witness, Detective Gary Burke, the police photo album Jackson used to identify Graves was admitted into evidence.... Graves objected to the admission of the photo album on the grounds that identity was not an issue and the exhibit was prejudicial. The trial court overruled this objection, and Graves was ultimately convicted of theft, a class D felony. *Graves v. State* (1985), Ind.App., 482 N.E.2d 1169, 1170–71.

## I. Admission of "Mug Book"

The exhibit in question is a book containing photographs from which the victim identified her assailant. The book was admitted in its entirety, and the photographs were displayed only to the witnesses. The jury saw the book only as it was carried to and from the witness stand.

This court has traditionally disapproved the use of "mug shots" out of fear that jurors may infer a criminal history from these photographs. *Richey v. State* (1981), Ind., 426 N.E.2d 389, 394. Such an inference of illegal conduct could deprive a defendant of the cloak of innocence to which he is entitled during the trial of the instant charge. This rationale extends to other procedural and evidentiary safeguards: the inadmissibility of evidence of prior convictions, the bifurcation of habitual criminal offender proceedings, and the disapproval of the appearance of the accused in shackles or jail clothing.

Such protections are not absolute, however, and a "mug book" is not a talisman in the presence of which all claims of fairness dissolve. "Mug shots" are not *per se* inadmissible and will be allowed if 1) they are not unduly prejudicial, and 2) they have substantial independent probative value. *Hovis v. State* (1983), Ind., 455 N.E.2d 577, 585. "Mug shots" are not unduly prejudicial if the State has made efforts to disguise the nature of the photographs. *Ashley v. State* (1986), Ind., 493 N.E.2d 768.

In allowing such conditional admissibility, we acknowledge that prejudice to the defendant may not be entirely eliminated, but such prejudice must be balanced with the State's interest in identifying, apprehending, and convicting the perpetrators of crime. In furtherance of this state interest, law enforcement officers maintain collections of photographs from which victims and witnesses may identify perpetrators of crime. No juror reasonably well-versed in television police drama would mistake these photographs for pictures taken from high school year books. However, when a perpetrator is identified from such a collection, the photographs become probative, relevant evidence at trial.

American courts are therefore faced with evidence which is at once inherently prejudicial and potentially important to the search for truth. We resolve the incongruity by requiring the State to make

every effort to disguise the "mug shot" by redacting any criminal information, law enforcement insignia, or other information which blatantly identifies the photograph with the criminal justice system. The slight prejudice which remains is outweighed by the necessity for effective identification of perpetrators by eyewitnesses.

 In this case, the State made no effort to disguise the "mug shots" contained in this exhibit. However, Graves was not prejudiced because the jurors never saw the photographs. The appearance of the book itself, like the appearance of the most carefully altered "mug shot," may contain slight prejudice. Any such prejudice is outweighed, however, by the probative value of this evidence.

The book is a graphic illustration of the procedure by which the victim identified the defendant. Graves challenged this identification, arguing that his accomplice was the actual attacker. This evidence showed that the victim unerringly chose defendant's photograph from numerous photographs as the individual who took her purse and pushed her to the ground.

## II. Amendment of Information

Graves was charged on May 18, 1984, by an information which alleged:

INFORMATION FOR COUNT I:
ROBBERY
CLASS A FELONY
I.C. 35–42–5–1

Jesse R. Bell, being duly sworn upon his oath, says that: On or about the 13th day of May, 1984, in Madison County, State of Indiana, ALFONZO E. GRAVES and TERRANCE L. JOHNSON did knowingly and by the use of force which resulted in bodily injury to Willie Bell Jackson, take property, to-wit: A Purse and United States Currency from Willie Bell Jackson.

On August 20, 1985, seven days prior to trial, the State moved to amend the information by inserting the word "serious" before "bodily injury." Graves objected, arguing that such an amendment was substantial and that he was prejudiced there-

by. The court allowed the amendment, and in this, appellant alleges error.

 Graves urges that an amendment which elevates the charge from a class B felony to a class A felony is not one of mere form, but of substance. Amendment of an information is proper at any time in order to correct any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant. *Radford v. State* (1984), Ind., 468 N.E.2d 219, 222; Ind.Code § 35–34–1–5(c) (Burns 1984 Supp.). In deciding whether an amendment is of form or substance under the prior code, Ind.Code 35–3.1–1–5 (Burns 1979 Repl.), this Court held that an amendment is one of substance only if it is essential to a valid charge. If a defense under the original information would be equally applicable to the information in its amended form, no substantial prejudice has occurred. *Gibbs v. State* (1984), Ind., 460 N.E.2d 1217, 1221.

 The defense offered by Graves, placing the blame on his accomplice, was equally available after the amendment, and he does not now offer any defense which he was precluded from presenting at trial. No continuance was requested to prepare a defense to the amended charge. Moreover, defendant was not misled; the charge facially alleged class A robbery, and he was aware from a police interrogation on May 30, 1984, that the victim suffered a broken arm.

"Defects or imperfections in an affidavit are only grounds for reversal where they prejudice substantial rights." *Schlacter v. State* (1984), Ind., 466 N.E.2d 1, 2. Appellant has not demonstrated substantial prejudice from amending the information. Therefore, the court did not err in allowing the amendment.

## III. Mistrial

Appellant alleges that the court erred in denying his motion for mistrial made after the following colloquy between the prosecutor and a prospective juror during voir dire:

Q: Now would you consider whether or not the defendant and his accessory had been involved in any other incidents?

A: Well, there again I don't think, uh, that would be a real issue, uh, as reputation. Uh, (inaudible) a lot of bearing on what had taken place this time.

Q: Would you agree that if there is an issue of identity ... that you could consider though if (inaudible) similar acts in which it was done in the same manner ...

A: Yeah, I suppose it is human nature to, uh, let the background affect your judgment somewhat. But, uh, (inaudible) not to the point where it is going to mean that somebody is guilty.

\* \* \* \* \* \*

Q: [I]t is what we call common scheme and plan. It is done in the same way, in the same manner. You can consider those type of things.

A: I suppose as far as investigation goes ...

The State had disclosed to the defendant that it planned to call the victim of a similar robbery which occurred the day after the charged crime. This victim would identify Graves as the individual who robbed him. Defendant had filed a motion *in limine* requesting that the court not allow evidence of other crimes. The court granted the motion, but the ruling was not made until after voir dire was completed.

Graves argues that the prosecutor's questions were an impermissible attempt to place before the jury information of other crimes, later ruled inadmissible. The jury was therefore so tainted, he says, that a mistrial should have been granted or the jury admonished to disregard the prosecutor's statements. Defendant failed to request an admonishment, however, and any error in failing to admonish the jury is therefore waived.

■ It is well established that the trial court has discretion in ruling on a motion for mistrial. That discretion will be disturbed only if the defendant was placed in a position of grave peril to which he should not have been subjected or if the prosecutor deliberately intended to prejudice the defendant. *Morgan v. State* (1981), 275 Ind. 666, 668, 419 N.E.2d 964, 967; *White v. State* (1971), 257 Ind. 64, 78, 272 N.E.2d 312, 320.

■ In this case, we see no deliberate attempt to prejudice the defendant. The prosecutor did not violate an order *in limine*, as no ruling had yet been made on the defendant's motion. When the voir dire commenced, the State still intended to present evidence of a similar crime. It was reasonable to question the potential jurors about their ability to consider such evidence.

Moreover, the prejudicial effect of the prosecutor's questions was slight. Both the prosecutor and defense counsel had cautioned potential jurors that any statements made by counsel were not to be considered as evidence. The prosecutor did not indicate that evidence of other crimes would be presented but only asked if the jurors would consider such evidence. The responses of the potential juror illustrate that juror's belief that evidence of similar acts would not have "a lot of bearing on what had taken place this time." This exchange was the only reference to similar acts which occurred during voir dire.

Under these circumstances, the prosecutor's questions were not a deliberate attempt to prejudice the defendant, and the defendant was not put in a position of grave peril. Therefore, the trial court properly exercised its discretion by denying the motion for mistrial.

### IV. Admissibility of Statements

Finally, appellant argues that the trial court erred when it permitted testimony about statements he made during custodial interrogation. These statements gave conflicting accounts of his whereabouts on the night of the robbery. He contends these statements were made during questioning conducted in violation of his asserted right to remain silent. He further argues that the statements were the product of coercion and duress. The trial court heard

evidence at a pre-trial hearing on Graves' motion to suppress and ruled that the statements were admissible.

 "The admissibility of a statement is controlled by determining, from the totality of the circumstances, whether or not it was made voluntarily. The same test determines whether a waiver of *Miranda* rights has occurred." *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 484. The State has the burden to prove the voluntary nature of the statement. *Nacoff v. State* (1971), 256 Ind. 97, 101, 267 N.E.2d 165, 167. In determining whether the State has met its burden, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. The ruling will be upheld if sustained by substantial probative evidence. *Garrett v. State* (1976), 265 Ind. 63, 65, 351 N.E.2d 30, 32.

At the hearing on Graves motion to suppress, there was conflicting evidence about when Graves invoked his right to remain silent. Graves testified that questioning continued after he requested his return to the Madison County Jail. Both Detectives Gary Burke and Chuck Johnson, who questioned defendant at the Anderson Police Department, testified that interrogation ceased immediately upon this request. The detectives also asserted that Graves gave his statements prior to invoking his right to remain silent. Under our standard of review, we accept the trial court's determination of the credibility of these witnesses and find that the interrogation did not continue after defendant invoked his right to remain silent.

Graves also asserts that the totality of the circumstances demonstrate that the statement was a result of coercion. Particularly, Graves urges that he was "already scared" when he was taken to the Anderson Police Department for questioning, that the detectives purposely angered him by comparing him to a prisoner who had received an eighty-year sentence, and that he was threatened that he would not be able to see his daughter for forty years.

In contrast, both officers testified that Graves did not seem "scared," but rather amused by the proceedings. Detective Burke admitted remarking that defendant's attitude was reminiscent of another prisoner who found himself sentenced to eighty years; however, he said such was merely an observation on the character of the defendant and not a threat. Both officers also testified that no reference was made to Graves' daughter.

The only evidence which is uncontradicted is the officers' reference to another prisoner. Although this comparison may have angered Graves, we do not believe such a reference was sufficient to overcome his free will. The statements were made voluntarily and were not in violation of appellant's asserted right to remain silent. The trial court properly admitted testimony regarding the statements.

We grant transfer, vacate the opinion of the Court of Appeals, and affirm the judgment of the trial court.

GIVAN, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents without opinion.