**Aaron ANDREWS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–8607–CR–676.

Supreme Court of Indiana.

April 10, 1989.

———————

Charles A. Beck, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

The defendant, Aaron Andrews, appeals his conviction for armed robbery and his habitual offender determination. Restated, he claims the following errors on appeal: (1) erroneous admission of habitual offender exhibits; (2) prosecutorial misconduct; (3) denial of right to confrontation; and (4) insufficient evidence of identity. We affirm.

*Habitual Offender Exhibits*

The defendant contends that the trial court erred in admitting over objection State's Exhibits 55 and 56 during the habitual offender phase. Both assertions rely upon his premise that there is insufficient evidence to link Exhibit 55, documentation of a prior felony by a person named Aaron Andrews, to the defendant herein. Exhibit 55 was a nineteen-page certified copy of prison records from Illinois for one Aaron Andrews, a/k/a Bobby Taylor.

■ Certified copies of judgments or commitments containing the same or similar name as the defendant's may be introduced to prove the commission of prior felonies. However, there must be other supporting evidence to identify the defendant as being the same person named in the documents. *Gilliam v. State* (1987), Ind., 509 N.E.2d 815; *Coker v. State* (1983), Ind., 455 N.E.2d 319. Identity may be proven by circumstantial evidence. *Coker*, 455 N.E.2d at 322. If the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of felonies twice before, then sufficient connection has been shown. *Id.*

■ In response to a request from the Marion County Prosecutor's Office regarding Aaron Andrews, a/k/a Bobby Taylor, the supervisor of the Department of Corrections Microfilm for the State of Illinois sent certified documents for one Aaron Andrews Sheridan # 140 AKA Bobby Taylor Vienna A–50984. The papers contained a cover sheet certification of the records and other pertinent identification. The certified records identified Aaron Andrews aka Bobby Taylor, a black male with a birthdate of 3/1/48, who was first received at the Joliet, Illinois, correctional institution on 9–7–73 and given the number 75075. He was later housed at the Sheridan, Illinois, correctional facility under # 140, then transferred to the Dwight, Illinois, correctional center on 6–17–74. He had been convicted of the offenses of jumping bail and armed robbery, sentenced on 3/31/73 to one day to one year and one day and 4–8 years respectively. He was paroled on 6/24/75. The records relating to Bobby Taylor, aka Aaron Andrews, a resident at the Vienna, Illinois, correctional facility, described a black male with a birthdate of 3/1/48, number C–50984, convicted of the offense of armed robbery, sentenced on 11–20–75 to 5–10 years. The records also contained photographs of an individual with an identification plate showing ISP Joliet, 75075, 9–7–73; photographs of an individual with an identification plate for Dwight, 5282, 6–17–74; and identification information attached thereto for a black male with a birthdate of 3/1/48, wt. 180 pounds, ht. 5' 11", dark complexion, serving a sentence of 4–8 years for armed robbery, who was transferred from Sheridan; and photographs of an individual with an identification plate for Illinois Dept. of Corrections, Vienna, C 50984, 7–23–79, and fingerprints.

Exhibit 56 contained a cover sheet certification by the Vienna Correctional Center in Illinois for one Bobby Taylor C50984. The records included a fingerprint card and photographs identifying the inmate Bobby Taylor, aka Aaron Andrews, as a black male, having a medium build, dark complexion, brown eyes, black hair, ht. 6 ft., wt. 183 pounds, date of birth 3/1/48, born in Mississippi, charged with armed robbery

and armed robbery, sentenced to 5–10 years and 4–8 years, respectively. Photographs included for this person identified him as Illinois Dept. of Corrections, Vienna, C50984, 11–16–77, with a second set of photographs taken on 7–23–79.

The defendant's driver's license found by police in the wallet he dropped at the bank during the robbery was of a black male, birthdate of 3/1/48, ht. 6 ft., wt. 185, brown eyes, and black hair. The jury was able to compare the descriptions and photographs contained in Exhibits 55 and 56 with the defendant's driver's license and the defendant himself, present in the courtroom during the trial. A fingerprint expert also identified the fingerprints on the card in Exhibit 56 as matching the fingerprints he had taken earlier of this defendant.

The evidence is amply sufficient to connect the defendant identified in Exhibit 55 with the defendant identified in Exhibit 56 and identify that person as the defendant here. The record establishes that the defendant was sentenced August 31, 1973, for armed robbery and paroled on June 24, 1975; that he committed an armed robbery on August 20, 1975, for which he was convicted on November 20, 1975; and that he committed the present offense on Sept. 13, 1984. This supports the jury determination that the defendant is a habitual offender.

### Prosecutorial Misconduct

The defendant next contends that the attempted introduction of State's Exhibit 50, an uncropped "mug shot", into evidence was a deliberate attempt to poison the record to his prejudice. He claims such action was flagrant prosecutorial misconduct warranting reversal. During the direct examination of Officer Jeffreys the prosecutor attempted to have the witness identify Exhibit 50, to which the defendant objected. The trial judge took the matter under advisement and later heard argument outside the presence of the jury. The prosecutor indicated the purpose for which she was offering the prior "mug shot" was to help the jury understand why the identification witnesses had had a difficult time picking defendant's picture from early pic-

tures of him. His head features and hair length were different in the early photographs police showed the witnesses, in contrast to how the defendant looked at the time of his arrest. The prosecutor indicated a willingness to modify the photograph according to the judge's direction. The defendant maintained his objection and moved for a mistrial. The trial court sustained the objection and denied the mistrial.

The defendant's basic argument is that the prosecutor should have made efforts to have court approval to alter the photograph before presenting it in court, to avoid making the defendant object in front of the jury. He contends the prosecutor's behavior was an intentional and deliberate attempt by the prosecutor to "flaunt" the exhibit in its unaltered form "in the jury's full view." He then attempts to bolster his argument by claiming that since his objection was sustained he was therefore deprived of his right to cross-examine the witness about the photograph.

To determine whether the prosecutor has engaged in misconduct during the trial, we refer to case law and the Disciplinary Rules of the Code of Professional Responsibility. If misconduct has been established, then we must determine whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Hill v. State* (1986), Ind., 497 N.E.2d 1061, 1065; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

This Court considered and rejected a similarly fashioned argument in *Graves v. State* (1986), Ind., 496 N.E.2d 383. In *Graves* the defendant contended that the admission of a book containing photographs from which the victim identified her assailant but which was never seen by the jury unduly prejudiced his case. "Mug shots" are not *per se* inadmissible and will be allowed if 1) they are not unduly prejudicial, and 2) they have substantial independent probative value. *Id.* They are not

unduly prejudicial if the State has made efforts to disguise the nature of the photographs. *Id.* To do so, the State is required to make every effort to disguise the "mug shot" by redacting any criminal information, law enforcement insignia, or other information which blatantly identifies the photograph with the criminal justice system. *Id.*

Here, the defendant's argument is that the State did not redact the information prior to having the witness identify the photograph. The State argues that the prosecutor was meeting foundation requirements by first having the photograph properly identified and then would have altered it according to the dictates of the trial court. However, the defendant objected to its use at all, even in redacted form, which objection the trial court sustained.

In *Graves,* this Court held that although the State made no effort to disguise the "mug shots" contained in the exhibit, there was no prejudice because the jurors never saw the photographs. The appearance of the book itself, like the appearance of the most carefully altered "mug shot," may contain slight prejudice, the Court held, but such was outweighed by the probative value of the evidence. The individual effect of the alleged error was not so inflammatory or prejudicial as to place the defendant in this case in a position of grave peril. *Hill,* 497 N.E.2d at 1065; *Hedges v. State* (1982), Ind., 443 N.E.2d 62. In the present case, the record does not provide support for the defendant's allegation that the photograph was displayed to the jury. Any prejudice resulting from the witness's testimony regarding it was slight as the defendant secured his desired relief, exclusion of the evidence.

### Right to Confrontation

The defendant also contends that his federal and state constitutional rights to confront the witness were violated because he was unable to cross-examine Officer Jeffreys concerning Exhibit 50. If the defendant felt precluded from cross-examining the witness about the exhibit it was because he preferred having the exhibit excluded from the evidence rather than submitted in an altered and cropped form. It was the defendant's own choice regarding the exhibit that precluded his further examination about the exhibit. His right to confront the witness was not violated.

### Sufficiency of Evidence

The defendant contends that the evidence was insufficient to support his conviction for robbery. In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Listing the elements for the offense of robbery as found in the statute,[1] the defendant argues that the record is devoid of any proof beyond a reasonable doubt that he was in fact a perpetrator of the alleged robbery. The facts most favorable to the State show that during the morning hours of September 13, 1984, the First Indiana Bank, Eastgate Branch, Indianapolis, was robbed. The defendant entered the bank and approached one of the bank tellers, produced a gun and ordered all three tellers to give him the contents of the cash drawers. After receiving the money, the defendant fled the bank, dropping his wallet as he left. A surveillance camera took black-and-white photographs of the robbery

1. Ind.Code § 35–42–5–1. Robbery. A person who knowingly or intentionally takes property from another person or from the presence of another person:

 (1) by using or threatening the use of force on any person; or

 (2) by putting any person in fear;

commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant and a Class A felony if it results in serious bodily injury to any person other than a defendant.

while in progress. Police obtained the defendant's identification and address from the wallet. When the police went to the address the next day with the photographs, the defendant's brother identified the defendant as the man in the photographs. The three bank tellers were unable to positively identify the defendant, but the one teller said he looked like the robber; his coloring and build were the same. When the defendant was arrested on December 29, 1984, he was hiding under a bed and had a handgun in his hand. The handgun had a silver barrel and matched the description of the weapon used during the robbery, as previously described by one of the bank tellers.

The jury was shown the photographs taken by the surveillance camera and heard each of the witnesses' testimony. We find that the evidence was sufficient to support the verdict and conviction.

Judgment affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.