Joseph G. EVERROAD, Appellant,

v.

STATE of Indiana, Appellee.

No. 73S00–8901–CR–26.

Supreme Court of Indiana.

May 22, 1991.

William F. Marshall, Karon E. Perkins, Dalmbert, Marshall & Perkins, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

Appellant was charged initially with one count of Murder and two counts of Forgery. A jury trial resulted in his conviction of Murder, for which he received a sentence of sixty (60) years.

The facts are: Late in the evening of October 4, 1985, the remains of Wesley Tichenor were found inside the building housing the office and shop of his used car dealership located in Columbus, Indiana. Mr. Tichenor, it was determined later, had suffered thirteen gunshot wounds to the head and upper body, seven of them penetrating his skull. After being shot he was placed on the floor of a service bay, covered with a plastic tarpaulin, and severely bludgeoned with a sledgehammer subsequently discovered nearby. The crime was first reported to police by "Jody" Everroad, the appellant herein, who with his former wife, Jackie, had stopped by the dealership at approximately 8:45 that evening ostensibly to close the purchase of three vehicles from the victim along with the trade-in of appellant's pickup truck.

The ensuing investigation, which lasted nearly two years, disclosed the victim had developed a reputation for selling cars for cash on a no-questions-asked basis, perhaps even to dealers in illicit drugs and others wishing to disguise their source of income. During the course of the investigation, appellant had given ten inconsistent statements to authorities.

Evidence at trial included testimony from appellant's family and acquaintances, to wit: that at the time of the killing, appellant was insolvent and unemployed; that he aspired to be a big-time drug courier, in emulation of his cousins Garnet and Greg Everroad, both of whom were serving lengthy sentences for drug offenses; and that on the day before the killing, he obtained a pair of work gloves, a Harrington & Richardson .22 caliber six-shot revolver substantially similar to one reported stolen from his father's home, and ammunition of the type used in the killing. He target-practiced with the pistol, supposedly in preparation for hunting raccoons.

Other testimony placed appellant at the victim's car lot several times on the day before the murder. Evidence placed him at the car lot on the evening of the murder and in a heated argument with the victim at approximately 7:00 p.m., just prior to the time of death. Appellant's actions and movements between the time of the murder and the time he reported finding the victim's body were suspicious in that after hurriedly picking up his former wife from her job and then their son at the baby-sitter's, he then stopped by his home to shave, clean up, and change clothes before returning to the car lot and reporting the crime.

Appellant's testimony at trial was that his cousins, Garnet and Greg, who were owed a substantial drug debt by the victim's son, arranged for appellant to obtain $13,000 to buy some vehicles from the victim, who then was robbed by others of the cash and killed, all in an effort to collect his son's drug debt. The jury of course was not required to believe this testimony. Subsequent to the killing, appellant possessed the keys and some paperwork to a Corvette, a Monte Carlo, and a Topaz owned by the victim. The titles had never been signed over by the victim. Other documents in appellant's possession were incomplete, suggesting the victim had never received payment for the three vehicles. Accordingly, the prosecution's theory of the case was that the murder had been committed to cover up an attempt by appel-

lant to steal the cars and obtain marketable title.

Appellant contends the trial court erred in admitting his statements and the fruits thereof despite the existence of an immunity agreement with the State. At the hearing on his motions to dismiss the charges and to suppress his statements, appellant and his initial counsel, Mr. Eynon, testified that on October 24, 1985, the prosecutor granted appellant immunity in return for any information he could supply regarding the instant homicide. Appellant maintains the agreement was for him to receive immunity in exchange for telling all he knew about Tichenor's death and to take a polygraph test to be approved by his attorney as to time, place, conditions and questions asked on the test, the questions to be limited to events surrounding the death and excluding other criminal activity.

The prosecutor, however, testified that to the best of his recollection, the most he had agreed to was to provide appellant with physical protection from persons alleged to be involved in the homicide in exchange for truthful information corroborated by other means. In fact, no agreement ever was reduced to writing; appellant testified Mr. Eynon told him he could trust the prosecutor therefore no written agreement would be needed. The trial court found there had been "some agreement" by which appellant would give an accurate statement and pass a polygraph test, in exchange for which the State would provide him protection as a witness and "generally consider the giving of testimony in dealing with the Defendant."

In his argument, appellant first reminds us of the policy disfavoring allowing the State to renege on an immunity agreement, *see Bowers v. State* (1986), Ind., 500 N.E.2d 203, and urges us not to allow it here. The State points out that the voluntariness of appellant's statements was a question of fact for the court below, whose finding is not to be disturbed so long as the record contains substantial evidence to support such a finding. *Chamness v. State* (1982), Ind., 431 N.E.2d 474. Moreover, as can be inferred from a reading of the immunity statute, Ind.Code § 35–37–3–3, use immunity is to be granted by the court upon the motion of the prosecution.

■ While we agree with the State's assertion here, we need not reach this far to decide this issue. Appellant argues the admission of his statements and the fruits thereof violated his Fifth Amendment right to avoid self-incrimination, citing the introduction of his ten various statements given over a period of time. However, he fails to demonstrate how their admission inculpated him or otherwise worked to his detriment. In the absence of any showing of prejudice, no reversible error is demonstrated. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied,* —— U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617. We thus can find none here.

There was no reversible error in the trial court's failure to dismiss the charges or suppress appellant's statements due to the alleged immunity agreement.

■ Appellant contends the trial court erred in admitting the testimony of Sheriff's Deputy James Tindall to the effect that appellant had admitted killing the victim. Deputy Tindall testified that as he was transporting appellant from an interrogation session with Detective Mark Gorbett back to the jail, appellant stated, "Tell Gorbett I did it." Tindall, who was unfamiliar with the investigation, responded, "Did what?", to which appellant replied, "I killed Tichenor." Appellant maintains his reported remark was the product of custodial interrogation and that Deputy Tindall failed to advise him of his *Miranda* rights.

As appellant acknowledges, however, the quoted remarks were not made in response to any questioning by Deputy Tindall; and while subsequent to those remarks, Tindall attempted to question him, appellant thereafter remained mute. While appellant unquestionably was in custody, his sole remark was unsolicited; therefore it was not the product of custodial *interrogation.* *Miranda* warnings thus were not required. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Wissman v. State* (1989), Ind., 540 N.E.2d 1209. The

admission of appellant's remarks made to Deputy Tindall was not error.

Appellant contends the evidence was insufficient to support his murder conviction and consequently the trial court erred in denying his motion for judgment on the evidence. He bases his argument on the assertion that even without the evidence derived from his ten statements alluded to above, the State's evidence tended to show that he could not have been at Tichenor's car lot at the time of the murder; that testimony against him by fellow jail inmates was inherently unreliable; and that his alleged remark to Deputy Tindall was not worthy of credit.

Appellant advances an elaborate argument involving recorded elapsed times from the car lot to his subsequent destinations, as well as the coroner's testimony that death occurred between 7 p.m. and 7:30 p.m., to lead us to the conclusion that he could not possibly have been at the car lot at the time the victim was killed. He notes in addition the testimony of forensic pathologist Dr. Dean Hawley to the effect that it would take a significant amount of time to commit the murder. Appellant points out that his former jail mates received substantial benefit, including sentence reduction, in exchange for their testimony, and asserts that Deputy Tindall's credibility was questionable and the "confession" he related was uncorroborated. Appellant also argues the Bartholomew County authorities conducted a sloppy investigation, failing to pursue obvious leads against others once it was decided to pursue charges against him.

■ Upon sufficiency review we look only to the probative evidence, and inferences reasonably drawn therefrom, favoring the verdict to see whether there was evidence to support a finding of guilt beyond a reasonable doubt; we will not reweigh the evidence nor judge the credibility of the witnesses. *Butler v. State* (1989), Ind., 547 N.E.2d 270; *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. All of appellant's allegations here involve either witness credibility, weighing the evidence, or both; such considerations are beyond our

purview. The foregoing facts, along with the evidence set forth at the outset of this opinion, are sufficient to enable a reasonable trier of fact to find appellant guilty as charged. The trial court did not err in denying his motion for judgment on the evidence.

Appellant contends the trial court erred in denying his motions for mistrial, and in refusing to admonish the jury in certain instances, concerning the conduct of the prosecutor. He argues the prosecution committed misconduct in purposely delaying discovery responses, concealing witnesses from the defense, and intimidating other defense witnesses with threats of harsher penalties in unrelated matters. He also maintains the prosecutor indulged in improper prejudicial and inflammatory conduct during both his opening and closing statements and during his cross-examination of appellant. Appellant concludes the court's admonitions were inadequate to remedy the prejudice incurred and thus it was error to deny his mistrial motions.

■ To support a motion for mistrial based upon prosecutorial misconduct, the defense must show that the prosecutor's actions constituted misconduct by reference to established norms of professional conduct, and that the ensuing prejudice placed him in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Whether the misconduct results in grave peril is determined not by the degree of impropriety involved, but by its probable persuasive effect upon the jury. *Id.; Andrews v. State* (1989), Ind., 536 N.E.2d 507. This effect, in turn, is assessed not by whether its absence conclusively would lead to an acquittal; rather, reversal is required where the evidence is close and the trial court fails to alleviate the prejudicial effect. *Johnson v. State* (1983), Ind.App., 453 N.E.2d 365. Even where an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal still may result. *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409.

■ In the case at bar, appellant's citations to various motions in the record, *e.g.*, to compel discovery, for continuance and for orders to comply, do raise a suggestion of dilatory pretrial tactics on the part of the State. However, a closer examination reveals they raise no more than a suggestion. In each instance, defense requests for production, to hire a private detective and for continuance were granted to such an extent as to allow reasonable time for investigation of the State's case and subsequent trial preparation. Appellant's allegations of "hiding witnesses" are not in the least borne out by the record, and his charges of coercion of defense witnesses involving threats of stiffer penalties in fact involve no more than typical plea-bargain negotiations. Appellant thus has shown no prejudicial misconduct regarding pretrial discovery matters.

■ Appellant likewise fails to demonstrate any substantial prejudice resulting from the prosecutor's opening and closing statements. While appellant makes a plausible case of intentional misconduct in his brief, a careful examination of the transcript reveals that where in fact there was objectionable behavior by the prosecutor during his necessarily lengthy introductory and closing statements, any harm accruing to appellant was cured by admonition from the bench. In those cited instances where there was no admonition, the alleged misconduct either is not to be found in the record or turns out to be *de minimis* in its import.

■ Appellant maintains the force of his testimony was diminished wrongfully when during its cross-examination of him, the prosecution forced defense counsel repeatedly to interrupt with an objection each time the prosecutor strayed beyond the bounds of proper cross-examination. Appellant asserts the prosecutor deliberately violated the trial court's ruling as to the allowable scope of questioning. However, the transcript reveals that what transpired was nothing more than setting the parameters of the State's cross-examination on a subject-by-subject basis. Given the involved and rather convoluted factual matrix found here, we see no evidence of prosecutorial misconduct in the State's cross-examination of appellant.

Appellant has failed to demonstrate either the intentional misconduct, *see Robinson, supra,* or the degree of prejudice approaching the level required to establish grave peril, *see Andrews, supra,* requisite to reversing a conviction due to denial of mistrial. We accordingly are unable to find the trial court committed reversible error regarding appellant's allegations of prosecutorial misconduct.

Appellant contends the trial court erred in denying his several motions for mistrial relating to his allegations of insufficiency of the evidence, a grant of immunity from the State, and the improper admission of Deputy Tindall's testimony. These allegations of error have been resolved against appellant in the preceding paragraphs of this opinion; we thus find no error in the denial of his motions for mistrial grounded thereupon.

■ Appellant contends the trial court erred in admitting evidence of a prior crime which had not been reduced to a conviction. Before trial, appellant filed a motion *in limine* to prohibit any mention of pending charges unrelated to the instant case or of acts of misconduct not resulting in conviction. The trial court granted this motion, then at trial admitted evidence regarding appellant's theft of a blue Oldsmobile Delta 88 from a Columbus car lot and his unsuccessful attempts to sell it without a title, eventually using it as "collateral" for a "consignment" order of illegal drugs.

Appellant, of course, is correct in asserting that evidence of a defendant's unrelated criminal activity generally is inadmissible as evidence of his commission of the charged offense. *Sharp, supra.* However, such evidence may be admissible to prove, *inter alia,* the accused's identification as the perpetrator, his intent or motive, or to demonstrate a common plan or scheme involving the charged crime. *Id.* Here, the evidence concerning the Delta 88 fits squarely into the State's theory that appellant perpetrated Tichenor's murder in order to steal three automobiles with titles

appearing sufficiently valid to be able to sell to third parties; such evidence thereby falls into the foregoing exceptions.

Moreover, as the State points out, in some of his pretrial statements appellant assured investigators they would find traces of Tichenor's blood in the Delta 88 at issue because, as his story went, the car had been used by the murderers who were alleged by appellant to be the same individuals who sold him the drugs on "consignment." The evidence at trial indicated no such traces were found; nevertheless, once appellant opened the door to the Delta 88's relevance to the offense charged, the circumstances surrounding its acquisition no longer were unrelated to the case at bar, and consequently evidence pertaining thereto was not improper.

In any event, the trial court did not err in admitting evidence of appellant's dealings with the Delta 88.

■ Appellant contends the trial court erred in improperly assisting the prosecutor in conducting his case, i.e., in presenting his evidence and examining witnesses. In support of his argument appellant cites only the portion of the record involving the prosecutor's cross-examination of appellant. As discussed above, we find no impropriety in these cited instances. We further note it is the trial court's function to guide and control the course and conduct of the proceedings. See Rowe v. State (1989), Ind., 539 N.E.2d 474. Again, we see no error here.

■ In his final assignment of error, appellant contends "[t]he sentence imposed by the Trial Court was unreasonable in light of the circumstances of this case." However, no mention of this issue is to be found in the argument section of the Brief of Appellant; it therefore is waived. See Ind.Appellate Rule 8.3(A)(7).

■ We nonetheless note sua sponte that the maximum statutory sentence of imprisonment, sixty (60) years, indeed does not seem unreasonable in light of the particularly brutal circumstances of this murder. See Ind.Appellate Rule 17. Moreover, in its sentencing statement the trial court set forth ample aggravating circumstances, as per Ind.Code § 35–38–1–7 (repealed 1990; now, see § 35–38–1–7.1), to support an enhanced sentence, noting that while appellant had no record of criminal convictions, his admitted aspirations to excel as a drug dealer and his money-making scheme which resulted in the instant killing indicate a need for treatment best provided by a penal facility; that such an offense would be likely to recur; and that any reduction in sentence would depreciate the seriousness of the crime.

The trial court is affirmed.

SHEPARD, C.J., concurs.

DICKSON and KRAHULIK, JJ., concur in result without separate opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The trial court found as a fact that there had been "some agreement" between the defense and the prosecution upon which appellant relied in giving up his privilege against self-incrimination and in subjecting himself to interrogation. The court found the terms to be that appellant agreed to speak truthfully and tell all he knew about the death of Tichenor and then pass a polygraph test and that, in exchange, the State promised to provide appellant with protection and "generally consider the giving of testimony in dealing with the Defendant." It is apparent that the trial court's wording here has an ambiguous quality. However, as a representation of one lawyer to another in the context of this negotiation, words having this same force would be received as testified to by defense counsel, namely, as a promise that in general his client would not have to face the consequences of his revelations to the police about the death of Tichenor, i.e., as a use immunity promise.

Appellant answered all of the questions put to him by the police over as many as ten sessions. He did not take a polygraph test as agreed because his lawyer and the prosecutor could not agree on the proper

procedures. This fact is uncontradicted. I would hold the State to this immunity agreement and require a new trial at which appellant's statements to interrogators would be excluded. *See Bowers v. State* (1986), Ind., 500 N.E.2d 203.

If the State's promise of special protection from others and of special deference towards him in the criminal matters then facing him did not constitute a promise not to use his statements against him in a future prosecution, it would nevertheless constitute the type of promise by the State which can bring about a confession, statement, or waiver of rights not freely self-determined. *Ashby v. State* (1976), 265 Ind. 316, 354 N.E.2d 192.

Upon objection to the admission of appellant's later statements at trial, the burden was properly upon the State to prove voluntariness. To this, end the prosecutor provided evidence (1) that the promise of the State was for protection only, a premise rejected by the trial court, (2) that inconsistencies in appellant's numerous statements showed falsehood and a breach of the terms of the agreement, and (3) that appellant did not pass a polygraph test. There was uncontradicted evidence by the defense, however, that the polygraph test did not occur because the State refused to permit defense counsel to restrict the questions which might be asked, contrary to the agreement. Upon the basis of this showing, I do not believe the State can be deemed to have satisfied its burden to prove that appellant's statements and waivers of rights were voluntary as required by the Fifth Amendment. If the Fifth Amendment was violated when appellant's statements were admitted against him at his trial, as is assumed arguendo in the majority opinion, such error could not be harmless beyond a reasonable doubt. As pointed out in the majority opinion, one of these statements provided the open door through which the State was able to introduce damning evidence that appellant committed theft of a blue Oldsmobile Delta 88.