**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK MAYS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1107-CR-669 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Judge
Cause No. 49G22-1004-FB-34157

**April 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Derrick Mays appeals his convictions for Class B felony robbery, Class D felony criminal recklessness, and Class C felony carrying a handgun without a license. We affirm.

## Issues

Mays raises four issues, which we restate as:

    I.    whether fundamental error occurred during the investigating officer's testimony;

    II.    whether the trial court abused its discretion by limiting Mays's cross-examination of the investigating officer;

    III.    whether the evidence is sufficient to sustain his conviction for criminal recklessness; and

    IV.    whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

## Facts

Mays and Nicolas Yturralde grew up in the same neighborhood, but they rarely had interaction with each other over the past several years. On April 26, 2010, Yturralde was visiting a friend when Mays and two of his friends drove past. Mays yelled for Yturralde, and they talked for a few minutes. Mays asked Yturralde if he could get a pound of marijuana, and Yturralde said he would try. Yturralde could only get half an ounce of marijuana, and he arranged to meet Mays at a friend's apartment. Mays did not want to enter the apartment, and they met in the parking lot and went to Yturralde's vehicle. Yturralde retrieved the marijuana from his vehicle, and Mays pulled out a handgun and pointed it at Yturralde. Yturralde started laughing, and Mays said, "this just

2

ain't no game." Tr. p. 66. Mays then said, "come on ya'all, come on ya'all," and two other men came from between the apartment buildings. Id. The two men also pulled out guns, and one man put a gun to Yturralde's head, while the other put a gun to his side. The men asked Yturralde where the rest of the marijuana was, and Yturralde said, "that's all I got." Id. at 70. The men then took Yturralde's money, wallet, phone, and keys. The men got into Yturralde's vehicle and told him to walk away. As Yturralde was walking and the men were driving away in his car, Yturralde heard a couple of gunshots. Yturralde went inside the apartment and called 911.

Yturralde told the police that Mays robbed him, but he did not mention the marijuana. Detective Benjamin Bierce prepared a photographic lineup, and Yturralde identified Mays's picture. Yturralde eventually told the police about the marijuana. The State charged Mays with Class B felony robbery, Class B felony carjacking, Class D felony criminal recklessness, and Class A misdemeanor carrying a handgun without a license. The State also alleged that Mays had a prior conviction for carrying a handgun without a license and that the Class A misdemeanor should be elevated to a Class C felony.

A jury found Mays guilty as charged. Mays then pled guilty to the enhanced handgun charge. The trial court entered judgment of conviction for Class B felony robbery, Class D felony criminal recklessness, and Class C felony carrying a handgun without a license. The trial court found Mays's criminal history, the fact that he was on parole at the time of the offense, the fact that he had twice had his probation revoked, and the fact that he received three incident reports while incarcerated at the Marion County

3

Jail as aggravators. The trial court acknowledged Mays's argument that he had a dependent child and that he pled guilty to the handgun enhancement but found that those factors were not substantial mitigators. The trial court sentenced Mays to concurrent sentences of twenty years for the Class B felony robbery conviction, three years for the Class D felony criminal recklessness conviction, and eight years for the Class C felony carrying a handgun without a license conviction, for an aggregate sentence of twenty years in the Department of Correction. Mays now appeals.

**Analysis**

***I. Fundamental Error***

Mays argues that fundamental error occurred as a result of Detective Bierce's testimony. Detective Bierce testified that, after hearing that Mays was a suspect in the robbery, he "searched the database of known photographs to see if there was a recent photograph and found one and generated a photo lineup for Mr. Mays." Tr. p. 163. Mays did not object at trial to this testimony.

The failure to object to the admission of evidence at trial generally results in waiver and precludes appellate review unless its admission constitutes fundamental error. Konopasek v. State, 946 N.E.2d 23, 27 (Ind. 2011). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Delarosa v. State, 938 N.E.2d 690, 694 (Ind. 2010). The error claimed must either make a fair trial impossible or constitute clearly blatant

4

violations of basic and elementary principles of due process. Id. This exception is available only in egregious circumstances. Id.

According to Mays, Detective Bierce's testimony was "tantamount to telling the jury that the picture of Mays was a mug shot." Appellant's Br. at 6. "'Mug shots' are not per se inadmissible." Jenkins v. State, 677 N.E.2d 624, 626 (Ind. Ct. App. 1997) (quoting Andrews v. State, 536 N.E.2d 507, 509 (Ind. 1989)). Instead, they are admissible if: 1) they are not unduly prejudicial; and 2) they have substantial independent probative value. Id. "When the State has made an effort to disguise the nature of the photographs by redacting criminal information and any other information which obviously identifies the photograph as a 'mug shot,' the photograph is not unduly prejudicial." Id. "In addition, when the perpetrator's identification is at issue, the photographs have probative value." Id.

We addressed a similar issue in Jenkins. There, the defendant argued that the trial court abused its discretion by admitting a photographic array. A police officer testified that the photos were taken from "our" files. Jenkins, 677 N.E.2d at 626. The defendant argued that the police officer's testimony "amounted to telling the jury that the photos were 'mug shots.'" Id. at 626 n.3. We noted that "[n]o witness explicitly testified that the photograph was a "mug shot" from police files." Id. at 626. The officer's statement was "not an unequivocal reference to 'mug shots' such that it was likely to have a significant impact upon the jury." Id. at 626 n.3.

Similarly, here, Detective Bierce merely stated that he had "searched the database of known photographs to see if there was a recent photograph and found one and

5

generated a photo lineup for Mr. Mays." Tr. p. 163. He did not explicitly testify that the photograph was a mug shot. The "database of known photographs" could have referred to photographs other than mug shots. Mays has failed to demonstrate that Detective Bierce's testimony made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process. We conclude that Detective Bierce's testimony did not result in fundamental error.

## II. Limitation of Cross-Examination

Next, Mays argues that the trial court abused its discretion by limiting his cross-examination of Detective Bierce. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Timberlake v. State, 690 N.E.2d 243, 255 (Ind. 1997), cert. denied. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997). However, if a trial court abuses its discretion by excluding evidence, we will reverse only if that error affects "the substantial rights of the parties." Ind. Trial Rule 61.

During cross-examination of Detective Bierce, Mays made an offer of proof regarding a line of questioning that the trial court had ruled was inadmissible. Specifically, Mays sought to question Detective Bierce regarding whether "people involved in drug deals kind of make up robbery claims . . . ." Tr. p. 177-78. During the offer of proof, Detective Bierce stated that it "happens with some frequency." Id. at 178.

Mays argues that the trial court abused its discretion by limiting his cross-examination of Detective Bierce on this subject. The right to cross-examine witnesses is

6

"subject to reasonable limitations placed at the discretion of the trial judge." Marcum v. State, 725 N.E.2d 852, 860 (Ind. 2000). The trial court retains wide latitude to impose reasonable limits based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. Id.

Mays argues that this line of questioning was relevant because his defense was that Yturralde was falsely accusing him. The State argues that this evidence was inadmissible pursuant to Indiana Evidence Rule 704(b), which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Our supreme court recently analyzed Indiana Evidence Rule 704(b) and held that testimony concerning whether an alleged child molestation victim is not prone to exaggerate or fantasize about sexual matters is an indirect but nonetheless functional equivalent way of saying the child is telling the truth. Hoglund v. State, 962 N.E.2d 1230, 1236 (Ind. 2012). Similarly, the line of questioning at issue here—that people involved in drug deals often falsely accuse others of robbery—is an implication that Yturralde testified falsely. The trial court did not abuse its discretion by limiting Mays's cross-examination of Detective Bierce on this subject.

### III. Sufficiency of the Evidence

Mays argues that the evidence is insufficient to sustain his conviction for Class D felony criminal recklessness. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility.

7

Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of criminal recklessness is governed by Indiana Code Section 35-42-2-2(b), which provides: "A person who recklessly, knowingly, or intentionally performs: (1) an act that creates a substantial risk of bodily injury to another person . . . commits criminal recklessness." The offense is a Class D felony if it is committed while armed with a deadly weapon. Ind. Code § 35-42-2-2(c)(2)(A). The charging information provided that Mays "while armed with a deadly weapon, that is: a gun or guns, recklessly performed an act that created a substantial risk of bodily injury to Nicolas Yturralde, that is: fired a gun or guns at or in the direction or proximity of Nicolas Yturralde." App. p. 22.

Mays first argues that the evidence is insufficient because there is no evidence that Mays or one of the men with him fired the gun. The State presented evidence that Mays and his accomplices robbed Yturralde at gunpoint and stole Yturralde's car.[1] As they drove away, Yturralde heard two gunshots. The jury could have reasonably concluded that Mays or one of his accomplices fired the shots.

---

[1] The jury was instructed regarding accomplice liability. See Ind. Code § 35-41-2-4.

8

Next, Mays argues that there is no evidence anyone was in the line of fire or near the person or persons shooting. According to Mays, this case is like Elliot v. State, 560 N.E.2d 1266 (Ind. Ct. App. 1990), and Boushehry v. State, 648 N.E.2d 1174 (Ind. Ct. App. 1995). In Elliot, we reversed a defendant's conviction for criminal recklessness where he fired his gun over uninhabited fields and woodlands. We concluded that the defendant's actions "did not create a substantial risk of bodily injury to another person because there were no people in or near his line of fire." Elliot, 560 N.E.2d at 1267. In Boushehry, we reversed a defendant's conviction for criminal recklessness when he fired his gun across a vacant lot.

We conclude, however, that this situation is more like Smith v. State, 688 N.E.2d 1289 (Ind. Ct. App. 1997), and Woods v. State, 768 N.E.2d 1024 (Ind. Ct. App. 2002). In Smith, we affirmed a defendant's conviction for criminal recklessness where he fired his weapon multiple times in his backyard in a residential neighborhood and a festival at a nearby park had just ended. In Woods, we affirmed a defendant's conviction for criminal recklessness where he fired shots in a residential neighborhood in close proximity to adults and children.

Here, the State presented evidence that Mays or one of his accomplices robbed Yturralde at gunpoint in an apartment complex parking lot in Indianapolis, took his vehicle, and fired two shots as they drove away. A reasonable jury could have concluded that a substantial risk of bodily injury arose by Mays or one of his accomplices firing the weapon in such a highly populated area. The evidence is sufficient to sustain Mays's conviction for Class D felony criminal recklessness.

9

## IV. Inappropriate Sentence

Mays also argues that his twenty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

10

The nature of the offenses are unremarkable. After asking his friend Yturralde to obtain marijuana for him, Mays and his two accomplices pointed guns at Yturralde and stole his marijuana, his wallet, keys, cash, cell phone, and car. As they drove away from the apartment parking lot, they fired two gunshots. However, twenty-six-year-old Mays has a significant criminal history. He has juvenile adjudications for theft, criminal mischief, and two adjudications for battery. Twice he was found to have violated probation or a suspended commitment. As a adult, he has convictions for Class C felony possession of cocaine, Class D felony dealing in marijuana, and two convictions for Class C felony carrying a handgun without a license. Mays had his probation revoked twice, and he was on parole at the time of these offenses. Although Mays argues that his sentence should be reduced because he has a dependent child and he pled guilty to the enhanced handgun charge, the trial court considered those factors but did not find them to be significant. Mays presented no evidence that he supports his child, and he only pled guilty to the enhancement. Given Mays's significant criminal history, which is similar to the current offenses, we conclude that Mays has failed to demonstrate that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

**Conclusion**

Detective Bierce's testimony did not result in fundamental error, and the trial court properly limited Mays's cross-examination of Detective Bierce. Further, the evidence is sufficient to sustain Mays's conviction for Class D felony criminal recklessness, and his sentence is not inappropriate in light of the nature of the offense and the character of the offender. We affirm.

11

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.