PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

v.

CHARLES E. JOHNSON, JR.,
                    *Defendant-Appellee,*

and

CHRISTOPHER J. BENYO; JOSEPH
MICHAEL KENNEDY; JOHN P. TULI;
KENT D. WAKEFORD,
                    *Defendants.*

No. 06-5181

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Walter D. Kelley, Jr., District Judge.
(1:05-cr-00012-WDK)

Argued: November 2, 2007

Decided: December 14, 2007

Before WILLIAMS, Chief Judge, and WILKINSON
and MICHAEL, Circuit Judges.

_____

Reversed by published opinion. Judge Wilkinson wrote the opinion,
in which Chief Judge Williams and Judge Michael joined.

_____

## COUNSEL

**ARGUED:** Charles Francis Connolly, Assistant United States Attor-
ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,

Virginia, for Appellant. Patrick J. Hanley, Covington, Kentucky, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Matthew J. Donnelly, Special Assistant United States Attorney, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

## OPINION

WILKINSON, Circuit Judge:

Defendant Charles "Junior" Johnson was charged in the Eastern District of Virginia with, *inter alia*, causing the filing of a false and fraudulent document with the Securities and Exchange Commission. After a pre-trial hearing, the district court granted Johnson's motion to dismiss the count for lack of venue. The government now appeals that decision.

In support of the district court's holding, the defendant makes two claims. First, he argues that the electronic transmission of a fraudulent document to a computer server in Alexandria, Virginia, does not constitute a venue-sustaining act. Second, he contends that because he could not have reasonably foreseen that the form would be transmitted to the Eastern District of Virginia, venue cannot lie in that district.

Based on the plain language and underlying purposes of the governing venue provision, 15 U.S.C. § 78aa, we reject both of these claims and find that the Eastern District of Virginia was an appropriate venue for this securities fraud offense. We thus reverse the district court's dismissal of the aforementioned count for lack of venue.

I.

This case arises from the prosecution of a corporate executive for securities fraud and other related offenses. On January 10, 2005, a federal grand jury in the Eastern District of Virginia returned a thirty-one count indictment against Johnson and five co-defendants.[1] One of

---

[1]Because this appeal relates to only one of the charges brought against Johnson, we focus solely on the facts pertinent to his case and the issue presently before us.

the counts, count 3, charged Johnson with causing the filing of false and fraudulent documents with the Securities and Exchange Commission ("SEC") in violation of 15 U.S.C. § 78j(b), 15 U.S.C. § 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. Specifically, it alleged that Johnson caused his company to submit an SEC Form 10-Q that contained fraudulently inflated revenue figures.

Johnson was the Chief Executive Officer and Chairman of the Board of Directors of PurchasePro.com, Inc. ("PurchasePro"), a publicly-owned company based in Las Vegas, Nevada, that sold internet procurement software designed to facilitate "business-to-business" transactions online. In March 2000, PurchasePro established a commercial partnership with America OnLine, Inc., to develop a business-to-business marketplace. According to the indictment, Johnson took personal control of PurchasePro's relationship with AOL and subsequently worked to inflate PurchasePro's reported revenue figures. The government alleges that this was accomplished through various devices, including secret and undisclosed side deals, the use of back-dated contracts, and false entries in the company's books and records.

Under federal rules and regulations, PurchasePro was required to file a quarterly revenue report, known as a Form 10-Q, with the SEC. On May 29, 2001, PurchasePro electronically submitted a Form 10-Q, containing its financial results for the first quarter of 2001, to the SEC through the Electronic Data Gathering, Analysis, and Retrieval system ("EDGAR"). According to the indictment, the filed documents contained false, misleading, and inflated revenue numbers. Notably, EDGAR's Management Office of Information and Technology and the system's computer servers, which store the transmitted files and make them publicly available through the EDGAR website, are located in Alexandria, Virginia, in the Eastern District of Virginia. The transmission to the EDGAR servers represents Johnson's lone contact with the Eastern District for the purposes of this offense.

After he was indicted in the Eastern District for causing the fraudulent submission, Johnson moved to have the count dismissed for lack of venue. Specifically, he argued that the Eastern District of Virginia was an improper venue under 15 U.S.C. § 78aa, the applicable venue provision for securities fraud offenses. On May 25, 2006, the district court held a hearing to consider the motion, and on October 16, 2006,

it issued an order granting the motion to dismiss count 3 for lack of venue.

Two days later, Johnson's trial on the non-dismissed counts began. The district court later declared a mistrial, and on November 14, 2006, the government filed a timely notice of appeal of the dismissal of count 3. This court has jurisdiction pursuant to 18 U.S.C. § 3731.

## II.

We review briefly the relevant venue standards. The Constitution has two provisions governing venue for criminal cases. Article III provides that criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Similarly, the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These constitutional safeguards are meant to "protect[ ] the defendant from bias, disadvantage, and inconvenience in the adjudication of the charges against him." *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005); *see also United States v. Smith*, 452 F.3d 323, 334 (4th Cir. 2006).

In accordance with these constitutional principles, Congress may, if it so desires, prescribe specific venue requirements for a particular crime. If Congress adopts such a statute, "that provision must be honored (assuming, of course, that it satisfies the constitutional minima)." *United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004). If Congress does not supply a specific venue provision, then venue is to "be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Ebersole*, 411 F.3d at 524 (quoting *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998)). It is well-accepted that there may be "more than one appropriate venue, or even a venue in which the defendant has never set foot," so long as it meets the relevant constitutional and statutory requirements. *Ebersole*, 411 F.3d at 524 (quoting *United States v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000)). The government bears the burden of proving venue by a preponderance of the evidence. *See Ebersole*, 411 F.3d at 524.

For securities offenses, Congress has provided a specific venue provision: "Any criminal proceeding may be brought in the district

wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa (2000). It is undisputed that this provision applies to count 3 and thus governs the issue at hand. The controversy in this case centers on whether the facts alleged in the indictment satisfy the requirements of this specific venue provision.

## III.

### A.

Johnson first argues that venue cannot lie in the Eastern District of Virginia because the electronic transmission of the Form 10-Q to the EDGAR servers in Alexandria, Virginia, did not constitute a material part of the alleged offense. *See In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003) (holding that a "venue-sustaining act [under § 78aa] need not constitute the core of the alleged violation, nor even be illegal, so long as it represents more than an immaterial part of the alleged violation[ ]") (quoting *S-G Sec., Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1121 (D. Mass. 1978)); *see also First Fed. Sav. & Loan Assoc. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1350 (S.D.N.Y. 1986) (finding that "any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue" under § 78aa).

The "essence" of the charged crime, Johnson asserts, is filing a fraudulent form with the SEC in Washington, D.C., not its servers in Alexandria. Moreover, the fact the SEC channels the Form 10-Q to its EDGAR Office "for its own administrative ministerial purposes" is "of no substantial consequence" and cannot "constitute a basis for venue." Brief of Appellee at 11-12 (citing *United States v. Bezmalinovic*, 962 F. Supp. 435 (S.D.N.Y. 1997) (holding that venue for a bank fraud offense was inappropriate in a district where the only contacts were a bank's "ministerial actions")). Thus, while Johnson concedes venue may lie in the District of Columbia, he argues that it cannot lie in the Eastern District of Virginia.

We cannot accept Johnson's contention. We therefore hold that causing the transmission of the Form 10-Q to the Eastern District of Virginia will suffice to sustain venue in that district. The notion that venue in securities prosecutions must be limited to where the "es-

sence" of the offense exists finds no basis in the text of § 78aa. To the contrary, this provision, whose language is "manifestly broad," *see AES Corp.*, 240 F. Supp. 2d at 559, simply requires that "*any* act or transaction constituting the violation" have taken place in the pertinent district, 15 U.S.C. § 78aa (2000) (emphasis added). As a result, the "venue-sustaining act need not constitute the core of the alleged violation," but merely one that is material to the charged offense. *AES Corp.*, 240 F. Supp. 2d at 559.

Under that standard, causing the transmission of a false Form 10-Q to the Eastern District of Virginia satisfies the requirements set forth in § 78aa. The violation with which Johnson is charged is causing the filing of fraudulent documents with the SEC. It is undisputed that the documents at issue were electronically transmitted to the Eastern District of Virginia and filed with the SEC through EDGAR. Moreover, this process was part of the SEC's normal course of business, *see Ebersole*, 411 F.3d at 525-27, 530-33, as all such documents are filed, stored, and disseminated to the public through the EDGAR website in Alexandria, Virginia. Because a material act that constitutes the violation occurred in the Eastern District of Virginia, namely the transmission of a fraudulent Form 10-Q into the district, the Eastern District is a proper venue under § 78aa.

Other courts have also found that causing the transmission of fraudulent information into a district is enough to establish venue in that district. For example, in *AES Corp.*, the court held that "[v]enue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district." 240 F. Supp. 2d at 559 (quoting *John Nuveen & Co. v. New York City Hous. Dev. Corp.*, 1986 WL 5780 (N.D. Ill. May 9, 1986)); *see also AES Corp.*, 240 F. Supp. 2d at 559 n.5 (collecting cases with similar holdings). Although *AES Corp.* involved a civil action, the court was interpreting the same language of § 78aa at issue here, as this particular provision applies to both civil and criminal proceedings. *See* 15 U.S.C. § 78aa. Likewise, in *United States v. Ebersole*, 411 F.3d 517 (4th Cir. 2005), this court, considering a different substantive offense (wire fraud) but a similar venue provision (the general "continuing offense" provision of 18 U.S.C. § 3237(a)),[2] held that

---

[2]18 U.S.C. § 3237(a) states that: "Except as otherwise expressly provided by enactment of Congress, any offense against the United States

venue was appropriate in any district where the defendant "caused any payment-related wire communication to be transmitted." *Ebersole*, 411 F.3d at 527.

Johnson counters with the decision in *United States v. Ferguson*, 432 F. Supp. 2d 559 (E.D. Va. 2006). In *Ferguson*, the court considered a motion to transfer venue in a criminal securities fraud case. The defendants, like Johnson, were charged in the Eastern District of Virginia with, *inter alia*, causing the filing of fraudulent documents with the SEC after transmitting false financial data through EDGAR. These transmissions represented the defendants' principal contact with the Eastern District. In granting the motion to transfer pursuant to Federal Rule of Criminal Procedure 21(b), the court noted that the SEC's "decision to locate EDGAR, the electronic filing system and to host the SEC website on a computer server in Alexandria, Virginia will not in and of itself transform the Eastern District of Virginia into the exclusive jurisdiction for criminal securities fraud cases." *Id.* at 569. This, Johnson urges, counsels a finding that the Eastern District lacks venue in the present case.

We find Johnson's reliance on *Ferguson* to be misplaced. In that case, the court was determining whether to transfer venue, not whether venue was permissible in the first instance. Although the defendants purportedly caused the electronic transmission of a false document into the Eastern District of Virginia, the court observed, and the government conceded, that "the majority of the alleged criminal activity took place in Connecticut and New York." *Ferguson*, 432 F. Supp. 2d at 566. After weighing the evidence and degree of inconvenience, the court granted the motion to transfer venue to the District

---

begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves."

of Connecticut in order to avoid "a substantial balance of inconvenience to the defendants." *Id.* at 562 (internal quotations omitted).

In so concluding, the court noted that the location of EDGAR and its servers could "not in and of itself transform the Eastern District of Virginia into the *exclusive* jurisdiction for criminal securities fraud cases. The hosting of an electronic impulse, without more, will not result in a *preferred* venue in this district." *Id.* at 569 (emphasis added). Johnson mistakenly understands these remarks to mean that, based on electronic transmissions to Alexandria, the Eastern District could not even serve as a "potential" jurisdiction or "permissible" venue. This misreads the district court's decision and its use of the terms "exclusive" and "preferred." In fact, when determining whether to transfer venue to the District of Connecticut, the district court in *Ferguson* implicitly assumed that venue *was* permissible in the Eastern District — otherwise, it would not have needed to weigh the relative inconveniences under Rule 21(b) if one district was not a permissible venue to begin with.

### B.

In the alternative, Johnson claims that venue cannot lie in the Eastern District of Virginia because he could not have reasonably foreseen that the Form 10-Q would be transmitted to that district rather than Washington, D.C. Even assuming that he could not have reasonably foreseen the document's destination, we reject Johnson's contention that this precludes the Eastern District from serving as an appropriate venue.

Johnson does not dispute that he caused the Form 10-Q to be transmitted to the EDGAR servers in the Eastern District of Virginia. Rather, Johnson argues that venue cannot lie there because he did not know and could not have reasonably foreseen that the form would be transmitted to Alexandria rather than Washington.

Johnson points to several reasons why he believed the form would be sent to Washington. First, the SEC's principal office is located there. Second, the official SEC address listed at the top of the Form 10-Q is Washington, D.C. Third, a federal regulation governing the filing of SEC documents states that "[a]ll papers required to be filed

with the Commission pursuant to the [Securities Exchange] Act or the rules and regulations thereunder shall be filed at the principal office in Washington, DC." 17 C.F.R. § 240.0-3(a). Thus, Johnson contends that it was reasonable for him to believe that the Form 10-Q would be filed in Washington, not Alexandria.

In *Ebersole*, a wire fraud case, we expressly reserved the question of whether there was a foreseeability requirement for establishing venue. 411 F.3d at 527-28 (refusing to "reach[ ] the merits of [the defendant's] foreseeability objection" because it had been waived). Other circuits that have addressed the issue in the context of wire fraud and related offenses are split on the matter. *Compare United States v. Angotti*, 105 F.3d 539, 543 (9th Cir. 1997) (holding that "[i]t is irrelevant whether [the defendant] subjectively knew the identity or location of [a bank] official" for the purposes of venue in a false statement prosecution), *and United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987) (indicating that it was unnecessary in a wire fraud prosecution to determine whether the defendant could have reasonably foreseen that a wire transfer would pass through the relevant district), *with United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003) (holding that "venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue").

In the context of securities offenses, we need not speculate as to whether there is, or should be, a mens rea requirement when it comes to venue. This is because the plain text of § 78aa does not permit us to hold that such a foreseeability requirement exists. The statute states simply that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Accordingly, we decline the invitation to judicially engraft a mens rea requirement onto a venue provision that clearly does not have one.

If Congress had wanted to limit venue to those districts where the defendant could have reasonably foreseen his criminal conduct taking place, it could have easily done so. Instead, it enacted a broad venue provision, one that lacked any reference to a defendant's mental state or predictive calculus, and focused solely on whether "any act or

transaction constituting the violation" took place in the district. 15 U.S.C. § 78aa.

We are especially reluctant to imply a foreseeability requirement in light of the fact that it "is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime." *United States v. Cooper*, 482 F.3d 658, 664 (4th Cir. 2007). This is because venue is similar in nature to a jurisdictional element, *see United States v. Perez*, 280 F.3d 318, 330 (3d Cir. 2002) (noting that venue is "an element more akin to jurisdiction than to the substantive elements of the crime") (quoting *United States v. Massa*, 686 F.2d 526, 530 (7th Cir. 1982)), and typically lacks any sort of explicit knowledge or foreseeability prerequisite, *see, e.g.*, Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

## C.

If we were to adopt either of Johnson's proposed interpretations of § 78aa, we would be eschewing not only the provision's plain language but also one of its plain objectives, namely avoiding having related counts adjudicated in piecemeal fashion across several venues. That, however, is not the end of the matter. To the degree Johnson believes the Eastern District of Virginia poses a burdensome or inconvenient forum, he may seek a transfer of venue, though not an outright dismissal of the count. *See* Fed. R. Crim. P. 21.

As noted earlier, the wording of § 78aa is unmistakably broad. One reason for such a broad venue provision is to minimize unnecessary inefficiencies in the prosecution of a single case where multiple counts address related underlying conduct. In this case, an improper dismissal of count 3 could lead to the sort of inefficiencies and multiplicity of efforts that § 78aa, specifically, and our criminal justice system, generally, seek to avoid. *Cf.* Fed. R. Crim. P. 8, 14 (governing the joinder of offenses and defendants in a criminal prosecution).

In the long-run, Johnson's restrictive approach to venue would be problematic for both defendant and prosecutor alike, as well as other interested third parties. If the government were required to bring related counts in separate venues, both prosecution and defense would

be tasked with preparing for multiple trials and exerting time, energy, and resources in more than one district. This could also produce notable inconveniences for witnesses who are forced to testify in more than one case and saddle the courts with extra litigation when there could have been a single prosecution. Therefore, unless otherwise directed by Congress or required by the Constitution, we should not undermine the broad wording of § 78aa and create inefficiencies where they need not and should not be.

Johnson predicts, however, that terrible results will ensue if we hold that venue under § 78aa can be established solely on the basis of an electronic transmission to the EDGAR servers in Alexandria. Specifically, Johnson warns that every public company that files a document through EDGAR will be subject to prosecution in the Eastern District, no matter how tenuous its links to the district otherwise are.

There are two responses to this argument. First, by finding the Eastern District to be an appropriate venue, we in no way impose a rule that all securities fraud prosecutions based on the filing of fraudulent documents through EDGAR *must* take place where the EDGAR server is located. Rather, we simply hold that such a district is one permissible venue. As always, the government may, in its discretion, prosecute in another available venue. *See United States v. Smith*, 452 F.3d 323, 336 (4th Cir. 2006) ("[O]ur venue rules make clear that where venue lies, the choice among acceptable fora is one for the prosecution.").

Second, to the extent Johnson believes the Eastern District is an inconvenient or prejudicial venue, Congress has already addressed these concerns through the safeguard of Federal Rule of Criminal Procedure 21. In particular, Rule 21(b) states that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." *See also United States v. Heaps*, 39 F.3d 479, 482-83 (4th Cir. 1994) (citing *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)) (listing ten factors that a court may consider when determining whether to transfer venue under Rule 21); *Ferguson*, 432 F. Supp. 2d at 562

(applying the factors and granting the motion to transfer in a criminal securities fraud case).

Therefore, if an appropriate venue is otherwise burdensome or inconvenient, a proper remedy is afforded the defendant under Federal Rule of Criminal Procedure 21. Congress obviously intended 15 U.S.C. § 78aa and Rule 21 to operate in tandem, and we decline to deprive either provision of its manifest effect.

## IV.

Based on the text of 15 U.S.C. § 78aa and the facts alleged in the indictment, we hold that the Eastern District of Virginia is a permissible venue for count 3 of the indictment against Johnson. Thus, the judgment of the district court dismissing that count for lack of venue is

*REVERSED.*