# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

JONATHAN A. NOVAK,

  *Defendant-Appellant.*

No. 08-5254

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:08-cr-00173-REP-1)

Argued: May 14, 2010

Decided: June 15, 2010

Before DUNCAN, Circuit Judge, HAMILTON, Senior
Circuit Judge, and Arthur L. ALARCÓN, Senior Circuit
Judge of the United States Court of Appeals for the Ninth
Circuit, sitting by designation.

---

Affirmed by published opinion. Senior Judge Hamilton wrote
the opinion, in which Judge Duncan and Senior Judge
Alarcón joined.

---

## COUNSEL

**ARGUED**: Robert James Wagner, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Richmond, Virginia, for

Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Frances H. Pratt, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, for Appellee.

---

## OPINION

HAMILTON, Senior Circuit Judge:

Under 18 U.S.C. § 228(a)(3), any person that "willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000," may be fined or imprisoned up to two years, or both. 18 U.S.C. §§ 228(a)(3) and (c)(2). Section 228 contains a specific venue provision, providing that a prosecution under § 228(a) may be brought in, among other places, "the district in which the obliger resided" during the time the person described in § 228(a) (*i.e.*, the person who willfully failed to pay the support obligation) "failed to meet th[e] support obligation." *Id.* §§ 228(e)(1) and (e)(2).

On appeal, Jonathan Novak challenges his § 228(a)(3) conviction, raising two challenges to the district court's jury instructions on venue. First, he contends the district court erred when it failed to instruct the jury that it had to find that he intended to remain in Virginia in order to find that he resided in Virginia. Second, he contends the district court erred when it failed to instruct the jury that it had to find that he resided in the Eastern District of Virginia during a time when he willfully failed to pay child support. Finding no reversible error, we affirm.

# I

In early 1989, Novak began a relationship with Tina Miller in California. After moving in together, Novak left for a job in New York in May 1989. Miller then discovered she was pregnant, and the couple married in August 1989. Novak continued to live in New York, while Miller remained in California. Shortly after the birth of the child in February 1990, Miller sought to have her marriage to Novak annulled, and an annulment was granted on July 3, 1990 by a California state court. As part of the annulment, Novak was ordered to pay child support in the amount of $658.00 per month. Some time in 1993, Miller stopped receiving child support payments from Novak. Through September 16, 2008, Novak had failed to pay $120,479.77 in back child support and $110,499.38 in interest, for a total balance due of $230,979.15.

Novak owned a house in Staten Island, New York with his fourth wife, Linda, whom he married in 1995. Their four-year old daughter developed a serious tumor in November 2003. Linda filed for divorce after the diagnosis. In August 2004, Novak took employment in Virginia on a consulting contract with a company called GFS. The contract was guaranteed through the end of 2004. Novak moved into a furnished apartment provided by GFS in Richmond, Virginia. After he left New York, Linda moved to evict Novak from the marital home in the ongoing divorce proceeding. As a consequence, he was ordered removed from the marital home on August 11, 2004. Novak's company, the Novak Advisory Group, took over the apartment lease from GFS in October 2004. Novak signed the lease and was listed as the sole occupant. The lease ran through December 2004. Novak traveled back to New York at least once a week during this time period in order to visit his daughter. His belongings and documents stayed in the marital home, and Novak claims he never intended to move to Virginia.[1]

---

[1]Apparently, during the time frame alleged in the indictment, Novak continued to make mortgage payments on the home in Staten Island, New York.

Novak's consulting contract was extended in December 2004. Novak's company then signed a lease for a fully furnished, corporate apartment at The Gables apartment complex in Richmond, Virginia. The lease was signed by Novak as the sole occupant and ran from December 30, 2004 until April 29, 2005. A second lease agreement extended the lease until April 29, 2006. The property manager observed golf clubs at The Gables apartment. Novak's "driv[ing] history record," (J.A. 111), lists a Richmond, Virginia address as his address of record from August 25, 2004, to October 31, 2005. A "certified vehicle record," (J.A. 112), shows that Novak purchased a car on November 26, 2004 and subsequently registered it in Glen Allen, Virginia.

Novak was arrested in New York on February 22, 2005, on an indictment from the Eastern District of California for failure to pay child support. The charging period on the indictment was from January 2002 through May 2004. Novak requested to report to pretrial services in Virginia. According to Novak, counsel advised him not to pay child support until after he was found guilty. On October 27, 2005, Novak pled guilty to one misdemeanor count of willfully failing to pay child support, *id.* § 228(a)(1). He was sentenced to a period of probation and ordered to pay child support starting January 12, 2006. Novak started paying $658.00 in monthly payments in December 2005, and continued making monthly payments until his arrest in connection with the case currently before the court. Novak served his sentence of probation on the California conviction in Virginia. His probation officer testified that he visited Novak at his apartment in Virginia and that Novak would travel on the weekends to New York to see his daughter.

In August 2007, Novak was arrested in connection with the case currently before the court. On April 2, 2008, Novak was indicted in the Eastern District of Virginia for failure to pay a past due child support obligation in an amount greater than $5,000.00, *id.* § 228(a)(1). A superseding indictment, issued

on July 8, 2008, increased the past due child support to greater than $10,000.00, *id.* § 228(a)(3). A second superseding indictment, issued on August 13, 2008, specified the charging period as on or about August 8, 2004 and continuing to on or about July 20, 2005.

A two-day jury trial began on September 17, 2008. Novak's defense centered on challenging the government's contentions that (1) he willfully failed to pay child support and (2) he resided in the Eastern District of Virginia at the time he failed to pay. With regard to his willful failure, Novak contended that he did not willfully fail to pay the child support during the time charged in the indictment because he lost contact with Miller around the same time he stopped making child support payments and could not locate her. He also contended that, from February 2005 through July 20, 2005, he did not willfully fail to make payments because he was advised by counsel not to make such payments. With regard to whether he resided in Virginia, Novak contended that he resided in New York and simply worked in Virginia. In support of this contention, Novak stressed that he traveled to New York every weekend to visit his daughter, he did not bring any furniture or household items to Virginia, he left all of his important papers in New York, he was arrested in February 2005 in New York, and lived in New York full-time after his work in Virginia concluded.

In its instructions to the jury, the district court gave specific instructions on venue. After explaining that venue was not an element of the offense and needed to be established by a preponderance of the evidence, the district court described the requisite showing needed to establish that Novak resided in the Eastern District of Virginia:

> [The government must show] that during a time charged in the indictment when the defendant failed to meet the support obligation he resided in the Eastern District of Virginia. Specifically, I think there

isn't any evidence, but that he was in the Richmond area. I don't think they contend he was anywhere other than that area. The term "reside" . . . used in this case to describe the location of the defendant simply means the act or fact of living in a given place permanently or for an extended period of time.

(J.A. 287-88).

Before the jury retired, the district court gave the jury two verdict forms. The first dealt with the substantive offense and required the jury to find, "We, the jury, unanimously find the defendant, Jonathan A. Novak, guilty or not guilty as charged in Count One of the indictment." (J.A. 290). The second form required the jury to find, "We, the jury, unanimously find by a preponderance of the evidence that the defendant, Jonathan A. Novak, resided in the Eastern District of Virginia . . . during the time charged in the indictment when he failed to meet the child support obligation." (J.A. 291).

The jury convicted Novak on September 18, 2008. When the jury returned its verdict, the first verdict form provided that "We, the jury, unanimously find the defendant, Jonathan A. Novak, guilty as charged in Count One of the indictment." (J.A. 297). The second verdict form was described slightly differently than it was before the jury retired for deliberations. The second form was described as finding, "[W]e, the jury, unanimously find by a preponderance of the evidence that the defendant, Jonathan A. Novak, resided in the Eastern District of Virginia for an extended period of time during the time charged in the indictment, and he failed to meet the child support obligation." (J.A. 297-98).[2]

At sentencing, the district court sentenced Novak to twenty-four months' imprisonment. The district court also

---

[2]The actual verdict forms were lost at some point in time between the trial and sentencing.

ordered Novak to pay $230,058.70 in back child support and interest. Novak timely appealed on December 17, 2008. On appeal, Novak raises two challenges to the district court's instructions on venue: (1) he contends the district court erred when it failed to instruct the jury that it had to find that he intended to remain in Virginia to find that he resided there; and (2) he contends the district court erred when it failed to instruct the jury that it had to find that he resided in the Eastern District of Virginia during a time when he willfully failed to pay child support.

## II

In *United States v. Johnson*, we recognized that two provisions in the Constitution govern venue in criminal cases. 510 F.3d 521, 523-24 (4th Cir. 2007). First, Article III provides that criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. Second, the Sixth Amendment requires that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These constitutional provisions are designed to protect a criminal defendant from "'bias, disadvantage, and inconvenience in the adjudication of the charges against him.'" *Johnson*, 510 F.3d at 524 (quoting *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005)).

In accordance with these provisions of the Constitution, Congress may, in its discretion, prescribe specific venue requirements for a particular crime. *Johnson*, 510 F.3d at 524. If Congress does so, "'that provision must be honored (assuming, of course, that it satisfies the constitutional minima).'" *Id.* (quoting *United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004)). In this case, Congress has enacted a specific venue provision in § 228 (§ 228(e)), and there is no suggestion that § 228(e) fails to meet the minimum requirements required by the Constitution. Accordingly, the issues raised by Novak

concern the adequacy of the district court's jury instructions on venue. Our review of the district court's jury instructions is for an abuse of discretion. *United States v. Jeffers*, 570 F.3d 557, 566 (4th Cir. 2009). In reviewing jury instructions, we will not reverse a conviction so long as the instructions, taken as a whole, adequately state the controlling legal principles. *Id.* at 566-67. Finally, the government must establish venue by a preponderance of the evidence. *Ebersole*, 411 F.3d at 524.

A

Novak first contends that the district court erred when it failed to instruct the jury that it had to find that he intended to remain in Virginia to find that he "resided" there. The parties agree that venue in this case is proper in "the district in which the obliger resided." 18 U.S.C. § 228(e). The district court defined "resided" as "the act or fact of living in a given place permanently or for an extended period of time." (J.A. 288). The term "resided" is undefined in § 228 and the parties dispute its meaning. Novak argues that the term "resided" includes an intent to remain in the Eastern District of Virginia. The government argues that Novak's definition is more appropriate for the term "domicile," that the term "resided" is distinct from the term "domicile," and that § 228 was designed to account for this difference by eliminating any intent requirement.[3]

Two circuits have published decisions defining the term "resided" in the § 228 context, and both of these decisions agree that the government is not required to prove an intent to remain in a state to establish that a person resided in such state. *See United States v. Venturella*, 391 F.3d 120 (2d Cir.

---

[3]Of note, Novak concedes that, if the government was not required to prove that he intended to remain in Virginia to establish venue, there is sufficient evidence in the record to establish that he resided in the Eastern District of Virginia during the time period alleged in the indictment.

2004); *United States v. Namey*, 364 F.3d 843 (6th Cir. 2004). Both opinions rest on the commonly understood difference in meaning between residence and domicile, the intent of § 228, and the absurd results that arise from requiring an intent to remain requirement. *Venturella*, 391 F.3d at 125-28; *Namey*, 364 F.3d 845-46.

With regard to the commonly accepted meaning of the term "reside," the court in *Namey* noted:

> The term "reside" has a commonly accepted meaning. Dictionaries define "reside" as "[t]o live in a place for a permanent or extended time," Webster's II New College Dictionary 943 (2001), or to "[l]ive, dwell . . . to have a settled abode for a time. . . ." Black's Law Dictionary (5th ed. 1979). An ordinary person would understand that a person resides where the person regularly lives or has a home as opposed to where the person might visit or vacation.

*Namey*, 364 F.3d 845; *see also Venturella*, 391 F.3d at 125 ("Residence is the act or fact of living in a given place for some time, while domicile is a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.") (citations, alterations, and internal quotation marks omitted).

With regard to § 228's legislative history, the court in *Venturella* noted that the legislative history confirmed that § 228 was designed to target a parent who simply resides in another state and is not concerned with the parent's state of domicile:

> The legislative history of the [Child Support Recovery Act] clearly shows that Congress understood that: (1) § 228 would apply to those "interstate" cases where a parent "lived" out-of-state, and (2) one of the major problems in interstate enforcement was an inability to garnish out-of-state wages effectively.

The [Child Support Recovery Act] would reinforce State garnishment laws by creating a strong incentive for parents to work in-state (or, of course, not to default willfully on their child support obligations). These concerns suggest that Congress expected the CSRA to cover out-of-state residents. No one ever mentioned domicile, any unique element of domicile, or any concern particular to domicile.

391 F.3d at 130-31. Similarly, the *Namey* court recognized that the

concerns expressed in the legislative record have little to do with the parent's intent to make the new state his or her domicile or permanent home—rather, it is the prolonged absence from the child's home state that concerned Congress. A parent who dwells, but is not domiciled, in a different state from his children is nonetheless absent from the child's state, and enforcement presents difficulties.

364 F.3d at 846.

With regard to absurdity, *Venturella* describes a number of scenarios which made patent that requiring an intent to reside would lead to absurd results. Consider this example set forth in *Venturella*:

Consider Annabelle and Barry, both of whom have child support obligations regarding their respective children in New York and are in default on those obligations in excess of $10,000. Annabelle lives only in New York. Barry lives only in Florida. If we assume that "resides" does not require an intent to remain, then, quite logically, only Barry has criminal exposure under § 228.

However, if we assume that "resides" requires an intent to remain, we must query the intents of Anna-

belle and Barry. Assume now, additionally, that Annabelle is from Richmond, Virginia, intends to return there, owns a home there, and has never had any intention of remaining permanently in New York. In fact, she hates New York and is quite vocal about it. Assume also that Barry is living in Florida only because he could not find work in New York, but that Barry is from New York City, thinks that life outside "the City" is boring, and intends to return there when the year is out. If "resides" denotes domicile, then Annabelle may fall within the proscriptions of § 228, simply because she loves Richmond and has ties to her old home. Barry, on the other hand, may escape the reach of § 228, because he desperately hopes to return to New York at the end of the year. That Annabelle may be prosecuted over Barry on the basis of her longing for Richmond is preposterous. It is also at odds with the focus of the statute—to offer federal criminal penalties against parents who willfully fail to honor their child support obligation and live in another State. Regional affections may be many things, but rarely are they criminal.

391 F.3d at 127.

Likewise, the Sixth Circuit in *Namey* explained:

A parent who dwells, but is not domiciled, in a different state from his children is nonetheless absent from the child's state, and enforcement presents difficulties. . . . [I]t would make no sense to read the statute as imposing the strict domicile test, which excludes parents who merely reside in another state but present the same enforcement difficulties as if they were domiciled there.

364 F.3d at 846.

Given the commonly understood difference in meaning between "resided" and "domicile," the purposes behind § 228, and the absurd results that arise when one requires an intent to remain to establish that the defendant resided in the state, we agree with the analysis of the courts in both *Venturella* and *Namey* and adopt the reasoning of these cases as our own. Accordingly, we conclude that the district court did not err when it defined "resided" as "the act or fact of living in a given place permanently or for an extended period of time," (J.A. 288), and that the evidence was sufficient, for purposes of venue, to establish that Novak resided in the Eastern District of Virginia during the time period alleged in the indictment.

B

The district court instructed the jury that it "must determine whether the United States has proved by a preponderance of the evidence, . . . that during a time charged in the indictment when [Novak] failed to meet the support obligation he resided in the Eastern District of Virginia." (J.A. 287-88).[4] Novak argues that the venue instruction should have required the jury to find that he "willfully fail[ed]," 18 U.S.C. § 228(a)(3), to meet the support obligation while he resided in the Eastern District of Virginia.[5] Novak posits that the instruction was

---

[4]As noted earlier, the government must establish venue by a preponderance of the evidence. *Ebersole*, 411 F.3d at 524.

[5]Although the term "willful" does not appear in § 228(e), Novak makes his argument through § 228(e)(1)'s reference to § 228(a), which does contain a willful component. Section 228(e)(2) allows for venue in "the district in which the obliger resided during a period described in paragraph (1)." 18 U.S.C. § 228(e)(2). An "obliger" is defined in § 228(e)(1) as "a person described in subsection (a)." *Id.* § 228(e)(1). The "period described in paragraph (1)," *id.* § 228(e)(2), is "a period during which [an obliger] failed to meet that support obligation," *id.* § 228(e)(1). Taken together, § 228(e)(2) allows for venue in the district in which a person described in subsection (a) resided during a period during which a person described in subsection (a) failed to meet that support obligation. The "person described in subsection (a)," *id.* § 228(e)(1), is any person who "willfully fails to pay a support obligation," *id.* § 228(a)(3).

erroneous because it "allowed the jury to find venue based on a period in which Mr. Novak did not make payments on advice of counsel (after February 2005), not upon a period in which he willfully failed to make payments." Appellant's Br. at 20.

For purposes of Novak's argument, we will assume, without deciding, that the district court was required in its venue instruction to instruct the jury that it had to find that Novak resided in the Eastern District of Virginia during a time when he willfully failed to pay child support. Such an assumption is of no help to Novak, however, because any error here is harmless for two reasons. First, the jury found Novak "guilty as charged in Count One of the indictment." (J.A. 297). The indictment alleged a willful failure to pay a child support obligation from August 8, 2004 to July 20, 2005, and further alleged that Novak was a resident of the Eastern District of Virginia during that time frame. Therefore, Novak's theory that the jury could have found that he did not willfully fail to pay child support because of advice of counsel is foreclosed by the jury's verdict. Second, Novak was not harmed by the instruction if he resided in Virginia prior to February 22, 2005, the date in which he suggests counsel advised him not to pay child support. If he resided in Virginia prior to February 22, 2005, then venue was proper. His argument, then, hinges on his prevailing on his Part IIA argument, that he did not "reside" in Virginia from August 8, 2004 to February 22, 2005, because during that time period he did not have the intent to make Virginia his permanent residence. For the reasons explained in Part IIA, Novak cannot prevail on this argument. Therefore, he cannot show any harm even if we assume the district court's instruction was erroneous.

### III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*