

**FILED**
Aug 07 2015, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy H. Bryant,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

August 7, 2015

Court of Appeals Case No.
90A04-1501-CR-11

Appeal from the Wells Circuit Court
The Honorable Kenton W. Kiracofe,
Judge

Trial Court Cause No. 90C01-1402-
FC-1

**Bradford, Judge.**

# Case Summary

[1]    In 2013, Appellant-Defendant Timothy Bryant owned and operated Summit
       City North West All Products ("Summit City"), a pawnshop in Fort Wayne,
       Allen County.  Bryant was required by local ordinance to upload records of

every item purchased by him or pawned at Summit City to LEADS, an online database established to facilitate the recovery of stolen goods. In September of 2013, authorities received a tip regarding a series of thefts, which led to Isaiah Burnau, who was found to have pawned a stolen chainsaw at another Fort Wayne pawnshop. The investigation soon led to Kristy Coverdale and Tony Haney. As it turned out, several items had been stolen in Wells County and pawned at Summit City and other pawnshops. It was also discovered that none of the items purchased from Isaiah, Coverdale, or Haney had been uploaded to LEADS. Appellee-Plaintiff the State of Indiana charged Bryant in Wells County with several crimes, and he was ultimately convicted of two counts of Class D felony aiding, inducing, or causing receiving stolen property and Class C felony corrupt business influence. Bryant contends that the trial court abused its discretion in denying his mistrial motion based on alleged prosecutorial misconduct and that the State failed to establish venue in Wells County. We affirm.

# Facts and Procedural History

[2] In September of 2013, Bryant owned Summit City, a pawnshop in Fort Wayne. Pursuant to Fort Wayne ordinance, Bryant was required to collect and, within twenty-four hours, upload information regarding any item sold or pawned to LEADS. Also in September of 2013, the authorities received a report from Keith and Debra Burnau that items had been stolen from their home and homes

of their relatives. The Burnaus believed that their grandson Isaiah had been stealing from the homes with the help of Haney and Coverdale.

[3] Wells County Sheriff's Detective Diane Betz was assigned the case and checked the LEADS database to see if Isaiah, Haney, or Coverdale had recently sold items to pawn shops. Detective Betz discovered that Isaiah had recently sold a chainsaw that had been reported stolen to a Cash America pawnshop in Fort Wayne. Detective Betz interviewed Isaiah, who admitted that he and Coverdale had sold stolen items at pawnshops, including stereo equipment from a car and a train set from a house in Wells County. Isaiah admitted to selling stolen goods at least a dozen times at Summit City. Detective Betz searched LEADS again but did not find any record of the stolen items.

[4] Detective Betz also interviewed Coverdale, who admitted that she had driven Isaiah and Haney from Wells County to Summit City to sell stolen goods. At the time of the thefts, Coverdale was in a sexual relationship with Bryant, and the two were in frequent contact by telephone and text message. Coverdale sold stolen stereo equipment to Bryant at Summit City. Bryant told Coverdale that he knew the stereo items were stolen but that "he would take care of it" by "get[ting] rid of [her] LEADS." Tr. p. 289.

[5] Detective Betz also interviewed Haney. Haney admitted that he had stolen the trains from a home where his mother worked as a housekeeper and sold them to Summit City. Haney told Detective Betz that he, Coverdale, and Isaiah took

carloads of stolen goods to Summit City and sold them. Detective Betz found that the trains were being sold by Summit City on eBay.

[6] Detective Betz contacted Fort Wayne Police Detective Joseph Lyons, who specialized in pawnshops. Detectives Betz and Lyons went to Summit City and asked employee Thomas Skinner if Summit City had any Pioneer stereo equipment for sale. Skinner directed the detectives to equipment that matched the description of equipment that had been stolen in Wells County. The Detectives also found several collector train engines at Summit City. When the detectives examined Summit City's sales records, they found records of sales by Haney, Coverdale, and Isaiah, none of which had been uploaded to LEADS. When confronted with the discrepancy, Bryant claimed that he did not believe he had to upload information about the items to LEADS because they were not worth enough. There are, in fact, no exceptions made in the LEADS ordinance for items of low value.

[7] On February 19, 2014, the State filed seven charges against Bryant: two counts of Class D felony aiding, inducing, or causing theft; two counts of Class D felony aiding, inducing, or causing receiving stolen property; two counts of Class D felony conspiracy to commit receiving stolen property; and Class C felony corrupt business influence.

[8] Bryant's trial was held October 29 through 31, 2014. During trial, Bryant called Skinner as a witness. Bryant offered into evidence Defendant's Exhibit A, which consisted of Summit City sales records involving Coverdale, Haney,

Isaiah, Randy Haney, and Elizabeth Haney.[1] Skinner testified that he had had difficulties uploading transaction information to LEADS. During cross-examination, the prosecutor asked Skinner why certain purchases from Haney, Coverdale, and Isaiah were not uploaded to LEADS, Skinner reiterated that he had had problems with LEADS:

> Q. Okay. During any of this period of time that you said you thought you had, that you testified that you had these alleged upload problems, did you call Detective Lyons and report upload problems?
>
> A. I had talked with him and told him that I'd had problems.
>
> Q. How many times during this period of time did you call and talk to him and were [you] talking about say from May of [2013] up to the time they came and took the property?
>
> A. It had been two or three times.
>
> Q. Two or three times and wouldn't it have been helpful to explain these upload problems occurred to other people by bringing in these other records to show that you had made attempts and their property didn't get uploaded on the…

Tr. p. 379.

[9] Bryant objected to the prosecutor's statement on the basis that it constituted an attempt to shift the burden of producing evidence onto Bryant. Bryant also moved for a mistrial, which motion the trial court denied. During the State's

---

[1] Elizabeth Haney is Tony Haney's mother, while Randy Haney's relationship to Tony is unclear.

closing, the prosecutor noted that the burden of proof was on the State. The trial court also instructed the jury that

> [u]nder the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt. *The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.*

Tr. p. 463 (emphasis added). The trial court also instructed the jury that "[t]he burden of proof is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crime charged." Tr. p. 463.

[10] Following trial, a jury found Bryant guilty of two counts of aiding, inducing, or causing receiving stolen property and corrupt business influence. On November 24, 2014, the trial court sentenced Bryant to an aggregate sentence of four years of incarceration.

# Discussion and Decision

## I. Prosecutorial Misconduct

[11] Bryant contends that the trial court abused its discretion in denying his mistrial motion based on alleged prosecutorial misconduct.

> To support a motion for mistrial based upon prosecutorial misconduct, the defense must show that the prosecutor's actions constituted misconduct by reference to established norms of professional conduct, and that the ensuing prejudice placed him in a position of grave peril to which he should not have been subjected. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d

843. Whether the misconduct results in grave peril is determined not by the degree of impropriety involved, but by its probable persuasive effect upon the jury. *Id.*; *Andrews v. State* (1989), Ind., 536 N.E.2d 507. This effect, in turn, is assessed not by whether its absence conclusively would lead to an acquittal; rather, reversal is required where the evidence is close and the trial court fails to alleviate the prejudicial effect. *Johnson v. State* (1983), Ind. App., 453 N.E.2d 365. Even where an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal still may result. *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409.

*Everroad v. State*, 571 N.E.2d 1240, 1244 (Ind. 1991).

[12] Bryant argues essentially that the prosecutor's comment shifted the burden to him to establish his innocence by producing documentary evidence that the problems uploading information to LEADS were real. While "[i]t is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case[,]" *Stephenson v. State*, 742 N.E.2d 463, 483 (Ind. 2001), no such suggestion was made or implied. Bryant called Skinner in an attempt to establish, *inter alia*, that records of purchases from the Haneys, Coverdale, and Isaiah were not uploaded to LEADS due to technical issues. This evidence contradicted testimony the State presented from Detective Lyons that during his investigation nobody at Summit City ever blamed technical difficulties for their failure to upload records. Even assuming that Defendant's Exhibit A bolstered Skinner's testimony (which is a generous assumption), the prosecutor's comment was merely a statement on evidence that Bryant himself introduced. We conclude that, far from improper burden-shifting, this was permissible

impeachment of a defense witness, arising from evidence the defendant introduced. *See Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind. 1988) ("[A] prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.").

[13] Bryant also argues that the prosecutor's comments were a violation of his Fifth Amendment right against self-incrimination.

> The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This privilege extends to the States through the Fourteenth Amendment. *Withrow v. Williams,* 507 U.S. 680, 689, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993). …
>
> In *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), the United States Supreme Court held that the Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify at trial. The *Griffin* Court reasoned that comment on the refusal to testify amounts to a penalty imposed by courts for exercising a constitutional privilege and that to allow such comment would impinge on the privilege against self-incrimination by making its assertion costly. *Id.* at 614, 85 S. Ct. 1229. The *Griffin* Court noted that a comment on the defendant's refusal to testify is "a remnant of the inquisitorial system of criminal justice, which the Fifth Amendment outlaws." *Id.* (citation and quotation marks omitted).

*Owens v. State*, 937 N.E.2d 880, 885-86 (Ind. Ct. App. 2010) (footnote omitted).

[14] Again we must disagree with Bryant. Put simply, the prosecutor's comments did not explicitly refer to Bryant's decision not to testify, and we conclude that no reasonable person could have interpreted them as such. The comments were, at most, a comment on an arguable weakness of the documents admitted

as Defendant's Exhibit 1, *i.e.*, the lack of records pertaining to persons other than the Haneys, Coverdale, and Isaiah. We conclude that the prosecutor's comments did not implicate Bryant's Fifth Amendment rights. *See Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001) ("If in its totality, however, the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal.").

[15] Moreover, we conclude that to the extent that the prosecutor's comments were arguably improper, any small potential of harm caused thereby was cured. The prosecutor mentioned in closing that the burden of proof rested on the State, and the trial court's final instructions made that abundantly clear as well as informing the jury that Bryant was not required to introduce any evidence on his behalf or prove anything. We conclude that this was sufficient to cure any misconduct that the prosecutor might have committed. *See Stephenson*, 742 N.E.2d at 483 (Ind. 2001) ("It is improper for a prosecutor to suggest that a defendant shoulders the burden of proof in a criminal case. However, a prosecutor's improper statements suggesting a defendant's failure to present witnesses may be cured by the trial court advising the jury that the defendant was not required to prove his innocence or to present any evidence.") (citation omitted).

## II. Venue

Bryant contends that the State failed to establish venue in Wells County.

> Except as otherwise provided by law, criminal actions are to be tried in the county where the offense was committed. Ind. Code § 35-32-2-1; *Kindred v. State,* 540 N.E.2d 1161, 1167 (Ind. 1989). If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense. *Id.* If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties. *Andrews v. State,* 529 N.E.2d 360, 363 (Ind. Ct. App. 1988), *reh'g denied, trans. denied.*
>
> It is the State's burden to prove that the offenses charged occurred in the county identified in the charging information. Venue must be proven by a preponderance of the evidence and may be established by circumstantial evidence. *Buzzard v. State,* 669 N.E.2d 996, 997 (Ind. Ct. App. 1996).

*Wurster v. State*, 708 N.E.2d 587, 599 (Ind. Ct. App. 1999)

[16] Bryant does not dispute that at least some of the items stolen and later sold to him were taken from victims in Wells County, nor does he argue that venue for the crimes of which he was convicted cannot lie in multiple counties. Bryant argues only that the State failed to establish Wells County as a proper venue for his prosecution because it produced no evidence that he *knew* the items were stolen from victims in Wells County. This argument is misguided.

[17] In rejecting Bryant's argument, we find the United States Court of Appeals for the Fourth Circuit's resolution of a similar claim to be particularly persuasive. In *United States v. Johnson*, the defendant was charged with, *inter alia*, causing the filing of a false and fraudulent document with the Securities Exchange Commission ("SEC"), which charge was dismissed by the district court for the

Eastern District of Virginia for lack of venue. 510 F.3d 521, 522 (4th Cir. 2007). Johnson argued in defense of the district court's dismissal that he could not have foreseen that the document at issue would be transmitted to the Eastern District of Virginia, where certain computer servers of the SEC (which is headquartered in the District of Columbia) are located. *Id.* at 522, 524.

[18] The Court rejected Johnson's argument that there should be a *mens rea* requirement when it comes to venue. The Court first noted that section 78aa of Title 15 of the United States Code applied, *id.* at 524, which provides in part that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." The Court continued:

> In the context of securities offenses, we need not speculate as to whether there is, or should be, a mens rea requirement when it comes to venue. This is because the plain text of § 78aa does not permit us to hold that such a foreseeability requirement exists. The statute states simply that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Accordingly, we decline the invitation to judicially engraft a mens rea requirement onto a venue provision that clearly does not have one.
>
> If Congress had wanted to limit venue to those districts where the defendant could have reasonably foreseen his criminal conduct taking place, it could have easily done so. Instead, it enacted a broad venue provision, one that lacked any reference to a defendant's mental state or predictive calculus, and focused solely on whether "any act or transaction constituting the violation" took place in the district. 15 U.S.C. § 78aa.
>
> We are especially reluctant to imply a foreseeability requirement in light of the fact that it "is well settled that mens rea requirements typically do not extend to the jurisdictional

elements of a crime." *United States v. Cooper*, 482 F.3d 658, 664 (4th Cir. 2007). This is because venue is similar in nature to a jurisdictional element, *see United States v. Perez*, 280 F.3d 318, 330 (3d Cir. 2002) (noting that venue is "an element more akin to jurisdiction than to the substantive elements of the crime") (quoting *United States v. Massa*, 686 F.2d 526, 530 (7th Cir. 1982)), and typically lacks any sort of explicit knowledge or foreseeability prerequisite, *see, e.g.*, Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

*Id.* at 527.

[19] Of relevance in this case, Indiana Code section 35-32-2-1(b) provides that "[i]f a person committing an offense upon the person of another is located in one (1) county and the person's victim is located in another county at the time of the commission of the offense, the trial may be in either of the counties." There is no dispute that the victims were in Wells County, where Bryant was tried. More importantly, and as with the federal statute at issue in *Johnson*, Indiana Code section 35-32-2-1 contains no *mens rea* provisions. Put another way, there is no requirement that Bryant *knew* his victims were in Wells County, only that they were, in fact, located there. As in *Johnson*, we are unwilling to read a *mens rea* requirement into Indiana Code section 35-32-2-1 when the General Assembly did not include it.

[20] Moreover, as the Indiana Supreme Court has observed,

> [v]enue is not limited to the place where the defendant acted. To the contrary, the legislature may provide for concurrent venue when elements of the crime are committed in more than one

county. *Joyner v. State,* 678 N.E.2d 386, 390-91 (Ind. 1997). Similarly, *where the precise location of the act is unknowable, a defendant may not avoid trial on this basis. Cutter v. State,* 725 N.E.2d 401, 409 (Ind. 2000).

*Baugh v. State*, 801 N.E.2d 629, 631-32 (Ind. 2004) (emphasis added). If the fact that the location of the offense is *unknowable* will not protect a defendant, then it follows that proof of such knowledge is not required. The upshot of all of this is that, even if we assume that Bryant was unaware that the goods were stolen in Wells County, his ignorance does not shield him from prosecution there. We conclude that the State adequately established proper venue in Wells County.

[21] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.