## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 05 2020, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Martez Smith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 5, 2020 <br><br> Court of Appeals Case No. 19A-CR-3013 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. 49G03-1810-F4-34029 |

**Baker, Senior Judge.**

[1] Martez Smith appeals his convictions for Level 4 Felony Unlawful Possession of a Firearm by a Serious Violent Felon,[1] Level 3 Felony Aggravated Battery,[2] and Level 5 Felony Criminal Recklessness.[3] He argues that the trial court (1) erred when it denied his motions for a mistrial and (2) violated Indiana's double jeopardy principles by entering judgments of conviction for both aggravated battery and criminal recklessness. Finding no error, we affirm.

## Facts

[2] On August 18, 2018, couple Breana Guynn and Shyheim White were at their home in Indianapolis, where they had spent the day together. Around midnight, White's brother and a friend of his came over to hang out with the couple. About an hour later, the group went together to the Rural Inn to buy some drinks and snacks; White drove Guynn in his car and the other two each drove separately. When they arrived at and entered Rural Inn, several people were already inside the store. White "bumped into" Smith as they walked past each other in the store and "some words [were] exchanged" between the two men. Tr. Vol. II p. 135. Smith then exited the store; White remained inside while he and Guynn finished their purchase.

---

[1] Ind. Code § 35-47-4-5(c).

[2] Ind. Code § 35-42-2-1.5.

[3] I.C. § 35-45-2-2.

[3]     Once outside, Smith repositioned his vehicle so that it was facing the exit of the store's parking lot and then got out and stood near the vehicle. Meanwhile, White and Guynn had exited the store and walked back to White's car in the parking lot. Smith briefly spoke with someone and then waited near his vehicle until another car showed up and stopped directly in front of Smith's vehicle. Smith then quickly approached the driver's side of this other vehicle before walking towards White's car holding a gun.

[4]     As White walked to the back of his car to close his trunk, he noticed Smith standing in the parking lot. White and Guynn got back into White's car and after White started the ignition, the couple heard "a bunch of gunshots," *id.* at 158, but "didn't see anyone shooting" or "figure out where they [were] coming from," *id.* at 136. White reversed the vehicle and proceeded to drive out of the parking lot. Smith walked back to his car and then quickly drove away from the scene.

[5]     As he drove away from the parking lot, White said he wanted to see if his brother was okay. Around the same time, Guynn "felt something wet, like a moist type of feel, and [she] just happened to look down and . . . realized [she] got shot" and that her legs "looked like they were exploded by fireworks." *Id.* at 136-37. Guynn called 911 while White drove them to a gas station nearby, where responding officers met them. The passenger side of White's car was riddled with bullet holes; White's brother's car, which had been parked next to the driver's side of White's car, also had several bullet holes. Guynn had been shot multiple times in the legs and she was transported by ambulance to the

hospital. She remained at the hospital for two weeks but was not able to walk on her own for almost ten months, and still suffers from severe nerve damage, numbness, chronic pain, and difficulty walking.

[6]  Detectives reviewed the Rural Inn's security camera footage and, using images from the video footage, issued a be-on-the-lookout notification ("BOLO") for Smith that was disseminated throughout the police department. Kirstin Bryant, an employee with the probation department who had been Smith's probation officer, contacted detectives after seeing the BOLO and identified Smith as the person in the images.

[7]  Officers executed a search warrant at Smith's address but Smith refused to surrender himself or exit the residence, which resulted in a stand-off with law enforcement. Officers eventually quelled the situation and searched Smith, finding his cell phone. Officers also received a tip about a Crown Victoria that was registered to Smith and matched the vehicle used during the shooting. The vehicle was located at a different address and was covered with a tarp and had the license plate removed and the VIN covered. A search of the inside of the vehicle produced an electric bill in Smith's name.

[8]  Next, detectives obtained search warrants for Smith's cell phone and the cell phone records. A cell phone analyst created a map based on those records that showed the location of cell phone towers used to connect Smith's phone around the time of the shooting and compared the cell tower locations to the location of

the shooting and Smith's address. This analysis showed that Smith's phone was near the shooting location at the time the shooting occurred.

On October 4, 2018, the State charged Smith with Level 4 felony unlawful possession of a firearm by a serious violent felon, Level 5 felony battery by means of a deadly weapon, and Level 5 felony criminal recklessness. On January 11, 2019, the State added a charge of Level 3 felony aggravated battery and an habitual offender enhancement.

A jury trial was held November 8, 2019. Prior to trial, the trial court granted Smith's motion in limine to prevent witnesses "from mentioning that [Smith] was on probation at the time of his arrest." Appellant's App. Vol. II p. 140. The parties agreed that Bryant could not "refer to herself as a probation officer" and that the word "probation" was not to be used, but that she could say "she worked for the court system, [and] she was supervising him as part of those duties." Tr. Vol. II p. 5-6. However, during the State's direct examination of Bryant, Bryant was describing a visit to Smith's home in which she "knocked on the door, [she] was asked who it was, and [she] said it was Kirstin with probation." Tr. Vol. III p. 36. Smith then objected and requested a mistrial based on the violation of the motion in limine.

The trial court denied the request for a mistrial, finding that Bryant's statement that she was "Kirstin with probation" did not put Smith in a position of grave peril and was merely a "very quick passing reference to probation." *Id.* at 45. The trial court issued the following limiting instruction to the jury:

[D]uring the testimony of the witness who is testifying at this time, there may have been information that was presented that's irrelevant to the issues as to guilt or innocence on the charges here today. You are directed and instructed by the Court to draw no inferences and make no reference to that information when you're deliberating in this case. I see you all nodding, so I'm assuming you all will follow that instruction, so thank you.

*Id.* at 48.

[12] The State continued with its direct examination of Bryant, and eventually asked her, "[d]id you take notes when you were [a] probation officer?"; Bryant responded "I did, yes." *Id.* at 54. Smith once again objected and requested a mistrial, but the trial court denied the request for the same reasons it denied the first request. The trial court offered to give another curative instruction to the jury, but Smith refused the additional instruction because he did not want to draw further attention to the issue. *See id.* at 55. At the conclusion of the trial the jury found Smith guilty as charged on all four counts. After Smith waived his right to a jury trial for the habitual offender enhancement, the trial court found him to be an habitual offender.

[13] At the sentencing hearing held November 26, 2019, the trial court vacated the conviction for battery by means of a deadly weapon due to double jeopardy concerns. The trial court sentenced Smith to ten years for unlawful possession of a firearm by a serious violent felon, five years for criminal recklessness, and fifteen years for aggravated battery that was then enhanced by fifteen years for

being an habitual offender, all to be served consecutively, for an aggregate term of 45 years imprisonment. Smith now appeals.

# Discussion and Decision

## I. Motions for Mistrial

Smith's first argument on appeal is that the trial court erred when it denied Smith's motions for mistrial. The decision of whether to grant a mistrial lies within the discretion of the trial court and we afford that decision great deference on appeal. *McCollum v. State*, 582 N.E.2d 804, 813 (Ind. 1991). "To prevail on appeal from the denial of a motion for mistrial, the appellant must establish that the questioned conduct 'was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected.'" *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind. 1989)). The gravity of the peril is measured by the challenged conduct's probable persuasive effect on the jury's decision, not the impropriety of the conduct. *Id.* The question is not whether the absence of this persuasive effect would lead to an acquittal instead of conviction, but rather whether "the evidence is close and the trial court fails to alleviate the prejudicial effect." *Everroad v. State*, 571 N.E.2d 1240, 1244 (Ind. 1991). "Even where an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal still may result." *Id.*

[15] Here, Smith argues that the trial court improperly denied his motions for mistrial when the State violated the motion in limine by making "repeated references to Smith's probation status." Appellant's Br. p. 13. Even with the curative instruction given the jury, Smith claims that the statements and the "rapid succession" in which they were made caused a probable and significant effect on the jury. Appellant's Reply Br. p. 5.

[16] We agree with both parties that there were two clear violations of the motion in limine here—first, when Bryant testified that she had said she was "Kirstin with probation" at a prior interaction with Smith, and second, when the State asked her moments later if she took notes when she was a probation officer. Tr. Vol. III p. 36, 54. The question, then, is whether these violations, given the other facts, placed Smith in grave peril and had a probable persuasive effect on the jury.

[17] We hold that they did not. With regards to the first statement, when Bryant stated that she was "Kirstin with probation," she did not specifically state that Smith himself was on probation, state that she was his probation officer, or provide any further information about Smith's probation. The question that prompted this response—asking Bryant "what happen[ed]" when she knocked on the door at Smith's residence—was also broad and open ended, with no indication that it was specifically designed to elicit the statement in violation of the motion in limine. *Id.* at 36. When combined with the curative instruction and admonishment to the jury regarding this portion of the testimony, the trial court did not err in denying the mistrial and concluding that Smith was not put

in grave peril by the statement. *See, e.g.*, *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002) (finding that the trial court's admonishment to the jury to disregard a witness's remark about defendant's prior unrelated criminal act sufficiently dispelled any grave peril and justified denial of the motion for mistrial); *James v. State*, 613 N.E.2d 15, 22 (Ind. 1993) ("A timely and accurate admonition is presumed to cure any error in the admission of evidence.").

[18] We likewise find that Smith was not placed in grave peril by the denial of a mistrial with regards to the second violation of the motion in limine. We agree with Smith to the extent that the second reference to probation, being made by the State itself as part of its examination of Bryant, let alone "on the heels of a lengthy discussion about a mistrial" based on the same word choice moments prior, is inexcusable and "should not be countenanced." Appellant's Br. p. 13. But even so, our inquiry is limited to whether the statement had a probable persuasive impact on the jury, which it did not.[4] First, like the first statement about probation, this question referencing Bryant's work as a probation officer did not specifically mention or provide details of Smith's own probation.

---

[4] Following Smith's objection to the State's question referring to Bryant as a "probation officer," the State immediately apologized, claiming "I didn't even know I said it. I'm sorry—I'm sorry, if I did. I think that the same analysis [as the first motion for mistrial] applies, but I can do nothing but offer apologies to you. I'm sorry." Tr. Vol. III p. 54. The State also did not object to the trial court's offer of a second curative instruction. We understand that this second reference to probation may very well have been an innocent mistake, and fortunately in the instant case it did not cause any reversible error. Nonetheless, we urge and expect counsel in such situations to take better care to comply with court-imposed limitations—especially in the immediate wake of a lengthy and explicit discussion about the exact same issue.

[19] Further, contrary to Smith's arguments, there was strong and ample evidence of Smith's guilt such that the State's two references to probation, however avoidable and unnecessary they may have been, failed to create any significant prejudice and put Smith in grave peril. "On appeal, where the jury's verdict is supported by independent evidence of guilt such that we are satisfied that there was no substantial likelihood that the evidence in question played a part in the defendant's conviction, any error in admission of prior criminal history may be harmless." *James*, 613 N.E.2d at 22. Here, the State presented video evidence and still photos of the shooting and of the shooter in the moments leading up to the shooting, which the jury was able to view and evaluate as to whether Smith was the shooter in question. The State also presented evidence that Smith's cell phone was located near the crime scene before and during the shooting, that he owned a vehicle matching the one driven by the shooter, and that the vehicle was found hidden at another residence. *See Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008) (finding that a witness's "implicit reference to [defendant's] prior incarceration" likely did not have significant effect on jury in light of all other evidence presented against the defendant).

[20] In sum, though we do not endorse the easily avoidable references to probation, we nevertheless find that the trial court did not err when it denied Smith's motions for mistrial. In light of the initial curative instruction and the other evidence against Smith, we think the passing references to probation did not place Smith in grave peril or have any significant persuasive effect on the jury.

# II. Double Jeopardy

[21] Next, Smith argues that the two convictions for aggravated battery and criminal recklessness violate double jeopardy principles. More specifically, he contends that the two offenses were based on the same evidence of gunshots fired at Guynn in the Rural Inn parking lot.

[22] Under Article 1, Section 14 of the Indiana Constitution, "no person shall be put in jeopardy twice for the same offense." In reviewing double jeopardy claims, "two or more offenses are the 'same offense' in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crime *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases in original). Under the actual evidence test, which Smith invokes here, the defendant must show a "reasonable probability" that the evidentiary facts used by the jury to establish all of the elements for one offense also were used to establish all—not just one or some—of the elements of a second offense. *Id.* at 53.

[23] To convict Smith of Level 3 felony aggravated battery, the State was required to prove that Smith "knowingly or intentionally inflict[ed] injury on a person that create[d] a substantial risk of death or cause[d] . . . (2) protracted loss or impairment of the function of a bodily member or organ[.]" I.C. § 35-42-2-1.5. To convict Smith of Level 5 felony criminal recklessness, the State was required

to prove that Smith "recklessly, knowingly, or intentionally perform[ed] an act that create[d] a substantial risk of bodily injury to another person." I.C. § 35-42-2-2.

[24] Here, the State proved aggravated battery by showing that Smith fired multiple gunshots that struck Guynn and caused her the requisite injury and impairment. It then proved criminal recklessness by demonstrating that Smith fired additional gunshots—importantly, ones that did not also strike Guynn—towards White, White's brother, and his brother's friend while in a parking lot full of multiple other people in close vicinity. Smith claims that the State relied on the evidence of the injury to Guynn that proved aggravated battery to also prove the "substantial risk of bodily injury" element required for criminal recklessness. As such, he argues, the same evidence of the same act—firing gunshots that injured Guynn—was relied upon by the jury to establish each element of the two offenses.

[25] We disagree. At no point did the State posit that the same bullets or gunshots that injured Guynn were the same ones that posed a substantial risk of bodily injury to White, his brother, his brother's friend, and other bystanders in the parking lot. Rather, the State produced evidence showing that Smith fired an assault rifle numerous times indiscriminately, aiming at Guynn as well as the others, and that there were several other people in the parking lot in plain view of Smith.

[26] To support his claim that the same evidence was used for both convictions, Smith points to the State's statement during closing argument that for the criminal recklessness offense, Smith "recklessly created a substantial risk of bodily injury . . . by shooting a firearm in a parking lot full of people at a business there. . . . And not only a substantial risk of bodily injury, we know for a fact, because you heard testimony [that] Breana Guynn was injured. No substantial risk there at all, she was injured." Tr. Vol. III p. 116. But rather than invoking the same evidence to prove both offenses, this statement merely shows a closing attempt by the State to define the risk of substantial bodily injury to the others in the parking lot by reference to the fact that Guynn actually *was* injured by other gunshots Smith fired. *See Wilcoxson v. State*, 132 N.E.3d 27, 33 (Ind. Ct. App. 2019) (finding no double jeopardy violation for two attempted murder convictions where defendant fired sixteen different shots at two separate law enforcement officers), *trans. denied*.

[27] Smith also relies heavily on our decision in *Stewart v. State*, 866 N.E.2d 858 (Ind. Ct. App. 2007), a case in which we found that the defendant's dual convictions of attempted battery and criminal recklessness violated double jeopardy principles. In *Stewart*, this Court found that the two convictions were based on the same single act of firing at a vehicle with several people inside and that the State failed to make any meaningful distinction between which gunshots supported attempted battery versus criminal recklessness for the same group of victims. *Id.* at 864-65. Smith's case, however, is readily distinguishable in that the State presented evidence that Smith fired gunshots that struck and

injured Guynn and separate gunshots that posed a substantial risk of injury to others.

[28] We therefore find no double jeopardy violation and hold that the trial court did not err in entering judgments of conviction for both aggravated battery and criminal recklessness.

[29] The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.